**Myron Allan YOUNG, Plaintiff/Appellant,**

v.

**STATE of Tennessee, DEPARTMENT OF SAFETY, Defendant/Appellee.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

July 7, 1995.

Application for Permission to Appeal Denied by Supreme Court
Dec. 4, 1995.

Lionel R. Barrett, Jr., Nashville, for appellant.

Charles W. Burson, Attorney General and Reporter, Rebecca Lyford, for appellee.

## OPINION

KOCH, Judge.

This appeal involves the forfeiture of $9,980 discovered by the Nashville police during an investigatory stop of a suspicious automobile. After the Commissioner of Safety ordered the forfeiture of the money under the Tennessee Drug Control Act, the owner filed a petition for review in the Chancery Court for Davidson County asserting that the officers did not have a valid legal basis for stopping his automobile. The trial court affirmed the commissioner's order, and the petitioner appealed. Like the trial court, we affirm the commissioner's order because we have determined that the officers' stop of the petitioner's automobile was based on reasonable suspicion supported by articulable facts and because the record contains substantial and material evidence that the money was subject to forfeiture under the Tennessee Drug Control Act.

### I.

The manager of a McDonald's restaurant on Dickerson Road called in a suspicious person report to the Metropolitan Police Department during the afternoon of New Year's Day in 1993. When Officers Tony Constant and Daniel Layne responded to the call, the

manager told them that she feared that the restaurant's only customer, later identified as Cecil Calhoun, was planning to rob them. She described how Mr. Calhoun had been acting suspiciously and had delayed for a long period of time before ordering a meal. Officer Constant ordered a hamburger, and the two officers took seats near Mr. Calhoun.

Mr. Calhoun quickly finished his meal and left the restaurant. He got into the front passenger seat of a waiting automobile parked in front of the restaurant. The officers could not see the driver, later identified as Myron Allan Young, or the interior because of the extremely dark tinting on the automobile's windows. Officer Layne called in the automobile's Kentucky license plate number to determine whether the automobile had been reported stolen, and then the two officers followed the automobile in their own police cruisers.

The automobile traveled two or three blocks south on Dickerson Road before turning into the parking lot of a strip shopping center containing a Kroger store. The Kroger store appeared to be the only open store in the shopping center. Even though there was adequate parking near the Kroger store, Mr. Young parked in an isolated section of the parking lot far away from the Kroger store. The officers positioned their cruisers at different ends of the parking lot to keep the automobile and its occupants in view and then watched as Messrs. Young and Calhoun got out of the automobile. Mr. Calhoun walked into the Kroger store, while Mr. Young carried on a conversation in the parking lot with an unidentified third party.

After Mr. Calhoun returned from the Kroger store carrying a plastic grocery sack, he and Mr. Young got back in their automobile and left the parking lot driving north on Dickerson Road. Officers Constant and Layne followed in their cruisers. After they decided to pull over the automobile, Officer Constant turned on his blue lights to signal the automobile to stop. Mr. Young immediately turned into another parking lot and stopped. Officer Constant approached the automobile on the driver's side, while Officer Layne approached from the passenger's side.

When Mr. Young informed Officer Constant that he did not have a driver's license or any other identification, Officer Constant asked him to get out of the automobile and arrested him for driving without a license. He also issued Mr. Young a citation for violating Tennessee's window tinting statute.[1] While Officer Constant was placing Mr. Young in his cruiser, Officer Layne asked Mr. Calhoun for identification, but Mr. Calhoun also had no driver's license or other identification. Since Mr. Calhoun could not drive Mr. Young's automobile without a driver's license, Officer Layne told him to sit in the police cruiser while he checked Mr. Young's automobile for identification.

As Mr. Calhoun opened his door and stepped from the automobile, Officer Layne observed a large bundle of money held together by a rubber band partially protruding from under the front passenger's seat. Officer Layne summoned Officer Constant, and the two officers radioed for supervisory assistance. Their supervisor suspected that the money was somehow related to a drug transaction and suggested that they call in a specially trained dog to search the automobile for illegal drugs.

Officer Constant asked Mr. Young about the money while they waited for the drug dog to arrive. Mr. Young said the money was his and that it was the proceeds from his body shop business in Campbellsville, Kentucky where he lived. He explained that he had brought the money to Nashville so his sister could deposit it in her bank account. He later stated that his sister lived in Kentucky but offered no other explanation why he had brought the money to Nashville. Mr. Calhoun denied knowing anything about the money and explained that he and Mr. Young had traveled to Nashville "to do some shopping."

The officers left the interior of Mr. Young's automobile untouched until the dog arrived. When its trainer placed the dog in the car to smell for drugs, the dog quickly indicated that the money under the front seat had the odor of drugs. At that point, the

---

1. Officer Constant did not understand at the time that Tennessee's window tinting statute did not apply to Mr. Young's automobile because it was not registered in Tennessee. *See* Tenn.Code Ann. § 55–9–107(a)(1) (1993).

officers had the automobile impounded and transported Mr. Young to jail where he was booked for driving without a license. They did not arrest Mr. Calhoun. Mr. Young was later released on his own recognizance.

Subsequent inquiries to the Kentucky State Police revealed that Messrs. Young and Calhoun were major suppliers of cocaine in Campbellsville and that Nashville was their suspected source of supply. They had also been indicted recently for trafficking in illegal drugs after they sold cocaine to two police informants during two controlled buys that were part of an undercover police operation. The Kentucky authorities also reported that Mr. Young was presently unemployed but that he had been known to buy wrecked automobiles and then repair them to sell. They also stated that they were unaware of Mr. Young ever selling one of his repaired automobiles.

## II.

Mr. Young's sole argument on this appeal is that the police did not have lawful grounds to stop his car. He asserts that the officers' mistaken impression that his automobile violated Tennessee's window tinting statute invalidates the stop and that the officers had no other basis for stopping him when they did. We disagree.

■ A police officer may make an investigatory stop of a motor vehicle when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *State v. Watkins,* 827 S.W.2d 293, 294 (Tenn. 1992); *State v. Coleman,* 791 S.W.2d 504, 505 (Tenn.Crim.App.1989). The courts must consider the totality of the circumstances when determining whether an officer's reasonable suspicion is supported by specific and articulable facts. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *State v. Watkins,* 827 S.W.2d at 294. These circumstances include, but are not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and

the pattern of operation of certain kinds of offenders. *United States v. Cortez,* 449 U.S. at 418, 101 S.Ct. at 695; *State v. Watkins,* 827 S.W.2d at 294. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him or her. *Terry v. Ohio,* 392 U.S. at 21, 88 S.Ct. at 1880; *State v. Watkins,* 827 S.W.2d at 294.

■ Contrary to Mr. Young's arguments, the tinting on his automobile's windows was not the sole, or even primary basis, for the investigatory stop in this case. Before stopping the automobile, the officers had received a suspicious person report concerning Mr. Calhoun from the restaurant manager. They had also observed first-hand: (1) Mr. Calhoun eating in the restaurant while Mr. Young remained outside in the parked automobile; (2) the extremely heavy tinting on the windows of Mr. Young's automobile; (3) Mr. Young's decision to park his automobile in a remote part of the shopping center parking lot when other, more convenient parking was readily available; (4) Mr. Young's rendezvous with an unidentified third party in a remote part of the shopping center parking lot; and (5) Mr. Young's and his companion's furtive glances at the police cruiser during their conversation in the parking lot.

All of these circumstances warranted Officer Constant's conclusion that "everything they were doing was just out of the ordinary. I mean, it's just nothing a normal citizen would do." Given their training and experience, the officers could reasonably have suspected, as Officer Layne testified, that an armed robbery or drug deal was looming.

The heavy tinting on the windows of Mr. Young's automobile may have added to the officers' suspicion, but it was not the sole basis for the officers' decision to stop the automobile or for Officer Constant's decision to arrest Mr. Young. Both officers testified unequivocally that they would have stopped Mr. Young's automobile even if its windows had not been tinted. Officer Constant also testified that Mr. Young was arrested for driving without a license after he could not produce identification of any sort.[2] The cita-

---

**2.** Officer Constant explained that he would have issued Mr. Young a citation for driving without a

license had Mr. Young provided him with any

tion for illegal window tinting was incidental to the entire transaction, and thus provides no basis for invalidating the investigatory stop.

## III.

 Since we have determined that the investigatory stop was proper, the only remaining issue is whether the record contains substantial and material evidence supporting the commissioner's conclusion that the $9,980 seized from Mr. Young is subject to forfeiture under Tenn.Code Ann. § 53–11–451(a)(6)(A) (1991 & Supp.1994). The evidence that the police drug dog detected the odor of illegal drugs on the money coupled with the testimony of the Kentucky State Police that both Mr. Young and Mr. Calhoun were major suppliers of cocaine in Campbellsville and that Nashville was one of their suspected sources of supply provides sufficient evidence to support the commissioner's decision that the money was used or intended to be used to facilitate a transaction in violation of the Tennessee Drug Control Act.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Myron Allan Young and his surety for which execution, if necessary, may issue.

TODD, P.J. (M.S.), and CANTRELL, J., concur.

identification. He stated that department policy required him to arrest persons only when they had no driver's license or other identification.