IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 11, 2003

## TERESA McEWEN v. TENNESSEE DEPARTMENT OF SAFETY

**Appeal from the Chancery Court for Davidson County**
**No. 01-1165-I     Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2002-02884-COA-R3-CV - Filed March 22, 2005**

_____

This appeal involves the forfeiture of personal property seized incident to a criminal investigation into the illegal sale of controlled substances. The owner of the property filed a claim for its recovery with the Tennessee Department of Safety. The Appeals Division of the Department of Safety, overruling an administrative law judge's initial order, ordered the forfeiture of all the seized property except a pickup truck. Thereafter, the owner filed a petition in the Chancery Court for Davidson County seeking judicial review of the Appeals Division's forfeiture order. The trial court affirmed the forfeiture order, and the owner of the property appealed. Although we disagree with the trial court's reasoning,[1] we likewise affirm the forfeiture order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Charles R. Ray and Jeffery S. Frensley, Nashville, Tennessee, for the appellant, Teresa McEwen.

Paul G. Summers, Attorney General and Reporter, and Michael A. Meyer, Assistant Attorney General, for the appellee, Tennessee Department of Safety.

**OPINION**

**I.**

Between October 3 and December 4, 1997, a confidential informant working with the Metropolitan Nashville Police Department purchased controlled substances from Teresa McEwen and William Robert Allen on eight separate occasions. The informant wore a recording device during these transactions and recorded telephone calls involving other illegal drug transactions

---

[1]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

between Ms. McEwen and Mr. Allen and other customers. The informant also personally observed drug transactions between Ms. McEwen and Mr. Allen and other customers. At one point, Ms. McEwen bragged to the informant that she and Mr. Allen could obtain and sell as many illegal drugs as the informant desired.

On December 5, 1997, Officer Greg Jones arrested Ms. McEwen two blocks from her home. Officer Jones discovered $455 in cash and Schedule IV controlled substances in her purse. The authorities then arrested Mr. Allen at the residence he shared with Ms. McEwen. When Mr. Allen was arrested, he possessed $1,505 in cash and a quantity of marijuana. The authorities searched the residence pursuant to a search warrant and seized marijuana, Diazepam and Clonazepam, various items of drug paraphernalia, two firearms, $1,960 in currency, many pieces of gold and silver jewelry, audio and video equipment, a coin collection, other items of personal property, and financial records belonging to Ms. McEwen and Mr. Allen. They also searched Mr. Allen's garage adjacent to the residence and seized eight vehicles, two race cars, two trailers, a go-cart, various automobile parts, and automotive tools and equipment.

When Ms. McEwen was arrested, she was working for Keepsake, Inc. and was earning approximately $3,800 per year. She also earned $35 per week helping Shelley Phillips clean her house.[2] Ms. McEwen was also receiving food stamps and was on TennCare. Mr. Allen apparently earned some money repairing motor vehicles, drag racing, moving houses, and other odd jobs. The amount of his income was unclear because he had not filed an income tax return for twenty years. Despite their meager incomes, their household records indicated that they had spent approximately $64,000 from January through June 1997, over and above their expenditures for food, fuel and other vehicle expenses, clothing, healthcare expenses, and other similar expenses.

On January 2, 1998, Ms. McEwen filed a petition with the Tennessee Department of Safety seeking to recover all of the property seized on December 5, 1997. An administrative law judge conducted hearings on September 7 and November 19, 1999, and on April 20, 2000 filed an initial order directing the forfeiture of $1,960 in currency and a .22 caliber pistol and ordering the return of the remainder of the property. On May 5, 2000, the State appealed the initial order to the Appeals Division of the Department of Safety.[3] On February 13, 2001, the Appeals Division issued an order reversing the administrative law judge and directing the forfeiture of all of the seized property except for a 1989 Chevrolet pickup truck that Ms. Phillips had given Ms. McEwen.

---

[2]Ms. McEwen apparently worked for Ms. Phillips off and on for nine years. According to Ms. Phillips, she paid Ms. McEwen $500 per month for two of those years, but Ms. Phillips, who was "really bad on dates," could not remember when those years were. Ms. Phillips testified that she loaned Ms. McEwen money to purchase clothes for Ms. McEwen's children. She also stated that she gave valuable gifts to Ms. McEwen, including $3,000 to replace the roof on her house and a pickup truck to replace her old automobile.

[3]Agencies may designate others to review initial orders. Tenn. Code Ann. § 4-5-315(a)(2)(C) (Supp. 2004). The Commissioner of Safety has designated the Appeals Division as the entity responsible for reviewing initial orders entered in forfeiture cases. Tenn. Comp. R. & Regs. 1340-2-2-.21(1) (2001).

On April 12, 2001, Ms. McEwen filed a petition in the Chancery Court for Davidson County seeking judicial review of the Appeals Division's February 13, 2001 order. On April 26, 2002, the trial court filed an agreed order directing the Commissioner to order the Metropolitan Police Department to return all of the seized property except for (1) $1,960 in currency, (2) certain items of gold and silver jewelry,[4] (3) the .22 caliber pistol, (4) a 1994 Chevrolet pickup truck, and (5) a Yamaha scooter.[5] Thereafter, on October 23, 2002, the trial court entered an order upholding the forfeiture of all of the items of personal property that had not already been returned to Ms. McEwen. Ms. McEwen has appealed.

## II.
### THE STANDARD OF REVIEW FOR FORFEITURE PROCEEDINGS

We turn our attention first to the proper standard of review for this case. Ms. McEwen asserts that judicial review of final agency decisions in forfeiture cases like this one should be governed by Tenn. Code Ann. § 27-8-101 (2000), the standard of review associated with petitions for common-law writs of certiorari. The trial court, however, assessed the sufficiency of the State's evidence using the "substantial and material evidence" standard in Tenn. Code Ann. § 4-5-322(h)(5) (Supp. 2004). Both Ms. McEwen and the trial court have chosen the wrong standard of review.

Prior to 1994, the courts reviewed administrative forfeiture decisions using the Uniform Administrative Procedures Act's now familiar standard of review found in Tenn. Code Ann. § 4-5-322(h) (Supp. 2004). This standard required reviewing courts to ascertain whether an agency's decision is supported by substantial and material evidence. Tenn. Code Ann. § 4-5-322(h)(5). When the Tennessee General Assembly rewrote the procedures governing the forfeiture of personal property in 1994,[6] it replaced the "substantial and material evidence" standard with the "preponderance of the evidence" standard. Tenn. Code Ann. § 40-33-213(a) (2003). Except for this change, the remaining provisions of Tenn. Code Ann. § 4-5-322(h) continue to govern the judicial review of forfeiture proceedings. Tenn. Code Ann. § 40-33-213(b).

One of the chief purposes of the Uniform Administrative Procedures Act was to provide a single method for obtaining judicial review of the decisions of state agencies. Accordingly, with several exceptions not applicable here, petitions for review have, for over thirty years now, replaced petitions for a common-law writ of certiorari as the procedural device for obtaining judicial review. Thus, in forfeiture proceedings, the standard of review in Tenn. Code Ann. § 4-5-322(h), as modified

---

[4]The items of gold and silver jewelry included sixteen gold and silver necklaces, two gold bracelets, twenty-seven pairs of gold and silver earrings, and seven gold pendants.

[5]On July 5, 2002, Ms. McEwen filed a contempt petition against the Department and the Metropolitan Police Department because the Metropolitan Police Department had not returned the property covered by the April 26, 2002 order. Five days later, the Commissioner directed the Metropolitan Police Department to return the property. On August 8, 2002, the trial court entered an order directing the Metropolitan Police Department to return the property in five business days.

[6]Act of April 20, 1994, 1994 Tenn. Pub. Acts 848.

by Tenn. Code Ann. § 40-33-213(a), has supplanted the standard of review in Tenn. Code Ann. § 27-8-101. Ms. McEwen cites no authority, and we can find none, for her assertion that Tenn. Code Ann. § 27-8-101 still governs judicial review of an agency's forfeiture decisions. Accordingly, we find that her reliance on Tenn. Code Ann. § 27-8-101 is misplaced.

By the same token, the trial court apparently overlooked the change in the standard of review wrought by Tenn. Code Ann. § 40-33-213(a). The "preponderance of evidence" standard now applies to all seizures occurring after the effective date of the amendment.[7] Because the seizure at issue in this case occurred on December 5, 1997 – well after the effective date of Tenn. Code Ann. § 40-33-213(a) – the trial court erred by employing the "substantial and material evidence" standard in Tenn. Code Ann. § 4-5-322(h)(5).

Tenn. Code Ann. § 4-5-322 requires courts to engage in a three-step analysis when they review a final administrative order. The court must first determine whether the agency has identified the appropriate legal principles applicable to the case. Then, the court must examine the agency's factual findings to determine whether they are supported by substantial and material evidence.[8] Finally, the reviewing court must examine how the agency applied the law to the facts. This step is, of course, a highly judgmental process involving mixed questions of law and fact, and great deference must be accorded to the agency.[9] At this stage, the court must determine whether a reasoning mind could reasonably have reached the conclusion reached by the agency, consistent with a proper application of the controlling legal principles. *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 275 (Md. Ct. Spec. App. 2003).

Courts reviewing administrative forfeiture orders use essentially the same three-step analysis. However, instead of reviewing the agency's findings of fact using the substantial and material evidence standard in Tenn. Code Ann. § 4-5-322(h)(5), the courts must review the sufficiency of the State's evidence using the preponderance of the evidence standard required by 40-33-213(a). The trial court used the wrong standard to review the Appeals Division's final order. We will not

---

[7]The courts continued to use the standard of review in Tenn. Code Ann. § 4-5-322(h)(5) for forfeitures occurring before October 1, 1994. *See, e.g.*, *Ware v. Greene*, 984 S.W.2d 610 (Tenn. Ct. App. 1998); *Cunningham v. Dep't of Safety*, No. 01A01-9509-CH-00411, 1997 WL 266851, at *1 (Tenn. Ct. App. May 21, 1997) (No Tenn. R. App. P. 11 application filed); *Gordon v. Greene*, No. 01A01-9511-CH-00522, 1996 WL 346674 (Tenn. Ct. App. June 26, 1996) (No Tenn. R. App. P. 11 application filed); *Murphy v. State Dep't of Safety*, No. 01A01-9507-CH-00322, 1996 WL 71916 (Tenn. Ct. App. Feb. 21, 1996) (No Tenn. R. App. P. 11 application filed); *Young v. State Dep't of Safety*, 911 S.W.2d 729 (Tenn. Ct. App. 1995); *Kyte v. Tennessee Dep't of Safety*, No. 01A01-9504-CH-00150, 1995 WL 581069 (Tenn. Ct. App. Oct. 4, 1995) (No Tenn. R. App. P. 11 application filed).

[8]"Substantial and material evidence" consists of such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion. Substantial and material evidence furnishes a reasonably sound basis for the agency's decision. *Freedom Broadcasting of Tenn., Inc. v. Tenn. Dep't of Revenue*, 83 S.W.3d 776, 781 (Tenn. Ct. App. 2002); *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001).

[9]*See Bobbitt v. Shell*, 115 S.W.3d 506, 512 (Tenn. Ct. App. 2003) (courts must defer to an agency's decision when there is a sound basis for it); *Martin v. Sizemore*, 78 S.W.3d at 268 (courts customarily defer to adjudicatory determinations made by agencies acting within their area of specialized knowledge, experience, and expertise).

-4-

compound the error on appeal, and accordingly, we will employ the "preponderance of evidence" standard as required by Tenn. Code Ann. § 40-33-213(a).[10]

### III.
### JUDICIAL REVIEW OF AN AGENCY ORDER THAT DIFFERS FROM AN INITIAL ORDER

Ms. McEwen takes issue with the Appeals Division's refusal to defer to the administrative judge's factual findings. She points out that it was the administrative judge, not the Appeals Division, who observed the demeanor of the witnesses at the hearing, and she asserts that the Appeals Division's refusal to accept the administrative law judge's findings and conclusions was "not only clearly self-serving but likewise arbitrary, capricious and thus illegal." Ms. McEwen's argument overlooks the fact that Tennessee's Uniform Administrative Procedures Act does not require an agency to defer to the fact-finding or legal conclusions in an administrative law judge's initial order.

Tennessee's version of the Uniform Administrative Procedures Act allocates the bulk of the decision-making authority to the agencies themselves. Even though the original 1974 version of the Act[11] authorized the use of "hearing examiners" and "administrative judges," their primary responsibility was to assist the agency in conducting contested case hearings in which the agency members themselves also participated. Tenn. Code Ann. § 4-5-120(b)(1) (repealed 1982). These hearing examiners and administrative judges lacked independent decision-making authority. While they could prepare "proposed decisions" for an agency's consideration, Tenn. Code Ann. § 4-5-120(a), (b)(2), the agencies themselves retained the sole authority to render final orders. The 1974 Act contained no provision permitting a proposed decision to become a final decision without first being reviewed and adopted by an agency.

The 1982 revisions to the Uniform Administrative Procedures Act[12] modestly expanded the decision-making authority of the hearing officers and administrative judges. These revisions authorized the hearing officers and administrative judges to issue "initial orders," Tenn. Code Ann. § 4-5-314(b) (1998), and these initial orders could become final orders by operation of law without being reviewed and approved by the agency. Tenn. Code Ann. § 4-5-315(a). However, if the agency reviewed an initial order, either at the request of a party or on its own motion, the agency itself was required to prepare and file its own final order. Tenn. Code Ann. §§ 4-5-314(a), -315(g).

---

[10]The "preponderance of evidence" standard mandated by Tenn. Code Ann. § 40-33-213(a) actually places a heavier burden on the State than does the "substantial and material evidence" standard in Tenn. Code Ann. § 4-5-322. *See Ware v. Greene*, 984 S.W.2d at 614 (substantial and material evidence is something less than a preponderance of the evidence but greater than a scintilla or glimmer).

[11]Act of Mar. 29, 1974, ch. 725, 1974 Tenn. Pub. Acts 945.

[12]Act of Apr. 8, 1982, ch. 874, 1982 Tenn. Pub. Acts 606.

In Tennessee's administrative decision-making hierarchy, like the hierarchy in most states, the agencies remain superior to the hearing officers and administrative judges. *See In re Denial of Eller Media Co.'s Applications for Outdoor Advertising Device Permits in City of Mounds View*, 664 N.W.2d 1, 6-7 (Minn. 2003). An agency's decision-making authority is not circumscribed in any way by an initial order. *See In re Appeal of Dell*, 668 A.2d 1024, 1032 (N.H. 1995).[13] Because an agency possesses its own fact-finding authority, it may make its own factual determinations, *Moore v. Ross*, 687 F.2d 604, 608-09 (2d Cir. 1982); *Faulkner Radio, Inc. v. Federal Communications Comm'n*, 557 F.2d 866, 870 n.23 (D. C. Cir. 1977); 2 CHARLES H. KOCH, JR., ADMINISTRATIVE LAW AND PRACTICE § 5.28[1], at 94 (2d ed. 1997) ("ADMIN. LAW & PRAC."), and it may substitute its judgment for that of the hearing officer or administrative judge. *Valkering, U.S.A., Inc. v. USDA*, 48 F.3d 305, 208 (8th Cir. 1993); *Mattes v. United States*, 721 F.2d 1125, 1129 (7th Cir. 1983); *Dep't of Health & Mental Hygiene v. Shrieves*, 641 A.2d 899, 908 (Md. Ct. Spec. App. 1994). Thus, when an agency reviews an initial order, it renders its own decision, *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993), and it is the agency's final order, not the initial order, that is the subject of judicial review. *Parker v. Sullivan*, 891 F.2d 185, 189 (7th Cir. 1989); *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d at 275; 2 ADMIN. LAW & PRAC. § 5.27[7], at 91.

Tennessee's version of the Uniform Administrative Procedures Act provides only general guidance regarding the procedure that an agency must follow when reviewing an initial order. While the agency must give the parties an opportunity to submit briefs, it is not required to permit them to present oral argument. Tenn. Code Ann. § 4-5-315(e). An agency must base its findings of fact exclusively on the evidence introduced during the contested case hearing or on matters that have been officially noticed, Tenn. Code Ann. § 4-5-314(d); however, it is not required to prepare a transcript of the contested case proceeding before rendering its own final order. Tenn. Code Ann. § 4-5-315(f). An agency's final order must also identify any differences between its findings of fact and conclusions of law and those in the initial order. Tenn. Code Ann. § 4-5-315(i).[14] Finally, an

---

[13]Several other states have amended their administrative procedures acts to broaden the decision-making authority of administrative law judges and to increase the effect of their decisions on the agencies' fact-finding. In Montana, an agency may not modify or reject an administrative law judge's findings of fact "unless the agency first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence . . .." Mont. Code Ann. § 2-4-621(3) (2003). In North Carolina, an agency must now "adopt each finding of fact contained in the administrative law judge's decision unless the finding is clearly contrary to the preponderance of the admissible evidence, giving due regard to the opportunity of the administrative law judge to evaluate the credibility of witnesses." N.C. Gen. Stat. § 150B-36(b) (2003); Charles E. Daye, *Powers of Administrative Law Judges, Agencies, and Courts: An Analytical and Empirical Assessment*, 79 N.C.L. Rev. 1571, 1581-87 (2001). Finally, the Texas Solid Waste Disposal Act provides that the agency may overturn an administrative law judge's findings of fact "only if . . . [it is] not supported by the great weight of the evidence." Texas Health & Safety Code Ann. § 361.0832(c) (2001); F. Scott McCown & Monica Leo, *When Can an Agency Challenge the Findings and Conclusions of an Administrative Law Judge?*, 50 Baylor L. Rev. 65, 80-84 (1998) ("McCown & Leo").

[14]This requirement is intended to encourage the agency to consider carefully its reasons for changing the findings of fact in the initial order. *See* McCown & Leo, 50 Baylor L. Rev. at 89.

agency's final order must include all of the provisions required by Tenn. Code Ann. § 4-5-314(c).[15] Tenn. Code Ann. § 4-5-315(i).

A reviewing court's task becomes somewhat more complicated when an agency disagrees with the findings of fact in an initial order. *See* 3 ADMIN. LAW & PRAC. § 11.10[3](b), at 73. In that context, it is still the agency's final order, not the initial order, that is reviewed. *Parker v. Sullivan*, 891 F.2d at 189; *Drexel Burnham Lambert, Inc. v. Commodities Futures Trading Comm'n*, 850 F.2d 742, 747 (D. C. Cir. 1988). An agency is not bound by the hearing officer's or administrative judge's credibility determinations and, in fact, may make its own independent credibility determinations without hearing live testimony. *Ryan v. Commodities Futures Trading Comm'n*, 145 F.3d 910, 918 (7th Cir. 1998); *Dep' t of Health & Human Servs. v. Maxwell*, 576 S.E.2d 688, 691 (N.C. Ct. App. 2003); 2 ADMIN. LAW & PRAC. § 5.64[5](d), at 240.

However, an agency should expect closer judicial scrutiny of its findings of fact when the agency disagrees with a hearing officer's or administrative judge's findings of fact. *Dantran, Inc. v. United States Dep't of Labor*, 171 F.3d 58, 73 n.8 (1st Cir. 1999), *rev'd on other grounds*, 246 F.3d 36 (1st Cir. 2000); 2 Admin. Law & Prac. §§ 5.27[7], at 91, 5.64[5](d), at 241. While the courts will not abandon the substantial and material evidence standard of review,[16] they may view the evidence supporting the agency's findings of fact as less substantial than it would otherwise be had the agency and the hearing officer or administrative judge reached the same conclusion. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496, 71 S. Ct. 456, 469 (1951); *Dep't of Health & Mental Hygiene v. Shrieves*, 641 A.2d at 906. The courts are particularly inclined to question an agency's disagreements with a hearing officer or administrative law judge as to credibility determinations. 3 ADMIN. LAW & PRAC. § 11.10[3](b), at 741.

An agency should not ignore the findings of fact and credibility determinations contained in an initial order. *See Universal Camera Corp. v. NLRB*, 304 U.S. at 496, 71 S. Ct. at 468-69; 2 ADMIN. LAW & PRAC. 5.28[2], at 94-95. It should give appropriate deference to the hearing officer's or administrative law judge's credibility determinations because of their opportunity to observe the demeanor of the witnesses. *Dep't of Health & Mental Hygiene v. Shrieves*, 641 A.2d at 906; 3 ADMIN. LAW & PRAC. § 12,23[4], at 213. While virtually all fact-finding involves an assessment of credibility in its broadest sense, only demeanor-based credibility determinations are entitled to special deference. *Universal Camera Corp. v. NLRB*, 340 U.S. at 496, 71 S. Ct. at 469; *Drexel Burnham Lambert, Inc. v. Commodities Futures Trading Comm'n*, 850 F.2d at 747 n.7; *Dep't of Health & Mental Hygiene v. Shrieves*, 641 A.2d at 907; *In re Hopkinton Sch. Dist.*, 862 A.2d 45, 49 (N.H. 2004); *Flores v. Employees Retirement Sys. of Texas*, 74 S.W.3d 532, 539 (Tex. App. 2002).

---

[15]Compliance with Tenn. Code Ann. § 4-5-314(a) is mandatory. *Levy v. State Bd. of Examr's for Speech Pathology & Audiology*, 553 S.W.2d 909, 911 (Tenn. 1977). The statute requires final orders to include (1) findings of fact, (2) conclusions of law, (3) policy reasons for the decision, (4) an explanation of the procedures for obtaining reconsideration or further administrative review, and (5) a description of the procedures for judicial review.

[16]We have already pointed out in Section II that the standard for reviewing the sufficiency of the evidence in forfeiture cases is the "preponderance of the evidence standard" required by Tenn. Code Ann. § 40-33-213(a) rather than the customary "substantial and material evidence" standard found in Tenn. Code Ann. § 4-5-322(h)(5).

The significance of the hearing officer's or administrative judge's credibility determinations depends largely on the importance of credibility in the particular case. *Universal Camera Corp. v. NLRB*, 340 U.S. at 496, 71 S.Ct. at 468-69; 2 ADMIN. LAW & PRAC. § 5.64[5](d), at 241-42. If credibility is not a central ingredient of the agency's decision, then the hearing officer's or administrative judge's credibility determinations are not very significant. If, however, credibility plays a pivotal role, then the hearing officer's or administrative judge's credibility determinations are entitled to substantial deference. *Dep't of Health & Mental Hygiene*, 641 A.2d at 907.

The initial order is a relevant and important part of the administrative record. *In re Appeal of Dell*, 668 A.2d at 1032. While a reviewing court must focus its attention on the agency's final order, it may consider the initial order when determining whether the agency's final order has sufficient evidentiary support. *See* 3 ADMIN. LAW & PRAC. § 11.10[3](a), (b), at 73. If the record contains evidence sufficient to support the conflicting findings of the agency and the hearing officer or the administrative judge, the agency's findings must be allowed to stand even though the court might have reached a different conclusion on its own. *Kopack v. NLRB*, 668 F.2d 946, 952 (7th Cir. 1982); *Dep't of Health & Mental Hygiene v. Shrieves*, 641 A.2d at 908.

## IV.
### THE EVIDENTIARY SUPPORT FOR THE APPEALS DIVISION'S ORDER

Ms. McEwen's principal issue on this appeal is that evidence does not support the Appeals Division's conclusion that the items of disputed property were subject to forfeiture and confiscation. She argues that the reviewing courts, like the administrative judge, should accredit her testimony regarding how she and Mr. Allen acquired this property. We have determined that the State presented sufficient direct and circumstantial evidence to prove by a preponderance of the evidence that the property claimed by Ms. McEwen had been received in an illegal exchange of a controlled substance or was the proceeds of such an exchange.

### A.

The State is seeking to confiscate the personal property claimed by Ms. McEwen pursuant to Tenn. Code Ann. § 53-11-451(a)(6)(A) (1999). Accordingly, the State must prove by a preponderance of the evidence[17] that each seized item of property was either "furnished, or intended to be furnished, in exchange for a controlled substance in violation of the Tennessee Drug Control Act of 1989" or that each item was "proceeds traceable to such an exchange."[18] Tenn. Code Ann. § 53-11-451(a)(6)(A). If the State failed to make out a prima facie case, the forfeiture of this

---

[17]Tenn. Code Ann. § 40-33-210(a) (2003); Tenn. Code Ann. § 53-11-201(d)(2) (1999).

[18]The State is not, and indeed could not, proceed under Tenn. Code Ann. § 39-11-703(a) (2003), which permits the forfeiture and confiscation of property "traceable to the proceeds from" a violation of any statute. That forfeiture proceeding is applicable only to property seized on or after June 27, 1998. *State v. A Tract of Land Known as 141 Belle Forest Circle*, No. M2000-01827-CCA-R3-CD, 2001 WL 1517028, at *3 (Tenn. Crim. App. Nov. 29, 2001) (No Tenn. R. App. P. 11 application filed). The seizure in this case occurred on December 5, 1997.

property is barred, and the property must be returned immediately. Tenn. Code Ann. § 40-33-210(b)(1).

To carry its burden by a preponderance of the evidence, the State must establish that each item of disputed property, more likely than not,[19] was exchanged or intended to be exchanged in an illegal drug transaction or that each item was traceable to such a transaction. The State may use both direct[20] and circumstantial[21] evidence to carry its burden of proof. Direct and circumstantial evidence is equally relevant, NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 4.01[5], at 4-10 (4th ed. 2000), and equally probative. *See, e.g.*, *State v. Kirchner*, 600 N.W.2d 330, 334 (Iowa Ct. App. 1999); *State v. Marsh*, 102 P.2d 445, 450 (Kan. 2004); *State v. Jenks*, 574 N.E.2d 492, 502 (Ohio 1991); *State v. Cherry*, 606 S.E.2d 475, 481 (S.C. 2004); *see also* 1A JOHN H. WIGMORE, EVIDENCE § 26 (Tillers rev. 1983). Accordingly, litigants may prove any material fact by direct or circumstantial evidence or a combination of both, *State v. Phillips*, 138 S.W.3d at 230; *Brown v. Daly*, 83 S.W.3d 153, 160 (Tenn. Ct. App. 2001), and in certain situations, circumstantial evidence may be more convincing than direct evidence. *United States v. Robinson*, 177 F.3d 643, 648 (7th Cir. 1999); *Estate of Brock ex rel. Yaden v. Risi*, 63 S.W.3d 729, 731 (Tenn. Ct. App. 2001).

**B.**

Ms. McEwen's credibility played a central role in this case, and it accounts, at least in part, for the differences between the initial order and the final order. This is not a case, however, in which the administrative judge found Ms. McEwen to be completely credible while the Appeals Division did not. In fact, both the administrative judge and the Appeals Division found significant portions of Ms. McEwen's testimony to be incredible.[22] The administrative judge and the Appeals Division differed as to the credibility of Ms. McEwen's explanation regarding the acquisition of the gold and silver jewelry, the .22 caliber pistol, the Yamaha scooter, and the 1994 Chevrolet pickup truck.

---

[19]Proving an allegation by a preponderance of the evidence requires a litigant to convince the trier-of-fact that the allegation is more likely true than not true. *Austin v. City of Memphis*, 684 S.W.2d 624, 634-35 (Tenn. Ct. App. 1984). A party has proven an allegation by a preponderance of the evidence when the aggregate weight of the evidence demonstrates that the allegation is more probably true than any other factual alternative. *See Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001).

[20]Direct evidence is evidence which, if believed, establishes the main fact at issue without inference or presumption. *State v. Phillips*, 138 S.W.3d 224, 231 (Tenn. Ct. App. 2003).

[21]Circumstantial evidence is evidence of collateral facts and circumstances from which the trier-of-fact may infer that the main fact at issue is based on reason and common experience. *State v. Phillips*, 138 S.W.3d at 231.

[22]Even the administrative judge disbelieved Ms. McEwen's testimony regarding (1) the acquisition of the drugs that she and Mr. Allen were selling illegally, (2) the source of the $455 found in her possession, and (3) the source of the $1,505 seized from Mr. Allen. The administrative judge also noted that Ms. McEwen had lied to the Department of Human Services and the Internal Revenue Service and that she had used a false address to avoid being required to register the Yamaha scooter when she purchased it.

Ms. McEwen's credibility is inherently suspect. Her property was confiscated after she was caught selling illegal drugs. She is now seeking to recover as much of her property as she can, and she has every reason to lie and little reason to tell the truth about the acquisition of the property. After observing her demeanor, the administrative judge concluded that much of her testimony was not believable. In light of the lack of specifics in Ms. McEwen's testimony, her failure to provide documents or other corroboration of her claims, and her other clearly unbelievable testimony, we decline to find that the Appeals Division acted arbitrarily or capriciously when it refused to believe Ms. McEwen's testimony regarding the acquisition of the currency, the gold and silver jewelry, the .22 caliber pistol, the Yamaha scooter, and the 1994 Chevrolet pickup truck.

We have also concluded that Ms. McEwen's testimony regarding her and Mr. Allen's legitimate income is not credible. Their own financial records reveal expenditures far greater than their reported income. Ms. McEwen tried to explain this discrepancy by testifying that she and Mr. Allen were actually earning more income than they reported. However, Ms. McEwen could produce no corroboration for this testimony. In fact, one of her witnesses conceded that she had purposely overstated Ms. McEwen's income to help her obtain a loan. Thus, instead of establishing that Ms. McEwen and Mr. Allen were using legitimate income to support themselves, their evidence underscores their untruthfulness. The record provides ample basis for a trier-of-fact to conclude that the bulk of Ms. McEwen's and Mr. Allen's purchases during late 1997 were not being made with funds that they had legitimately earned.

## C.

We now turn to the adequacy of the State's evidence justifying the confiscation of the property ordered forfeited by the Appeals Division. To succeed, the State's evidence must prove that each item of property, more likely than not, was either furnished in exchange for an illegal controlled substance or that it was traceable to the illegal exchange of a controlled substance. We have concluded that the State carried its burden of proof with regard to all the seized property at issue on this appeal.

We turn first to the $455 seized from Ms. McEwen and the $1,505 seized from Mr. Allen. These funds were seized shortly after both Ms. McEwen and Mr. Allen had sold illegal drugs, and both Ms. McEwen and Mr. Allen were also possessing illegal drugs when the money was seized. Ms. McEwen herself conceded that half of the $455 was proceeds from the sale of illegal drugs. Because commingling the proceeds from the sale of illegal drugs with legitimate funds subjects the entire amount to forfeiture, *United States v. One Single Family Residence*, 933 F.2d 976, 982 (11th Cir. 1991), the record contains sufficient evidence to support the Appeals Division's decision to confiscate the $455 seized from Ms. McEwen.

The fact that Mr. Allen possessed both marijuana and $1,505 when he was arrested is not sufficient by itself to establish that the money had been received in exchange for a controlled substance. However, it is relevant and may be considered along with other circumstantial evidence. *Lettner v. Plummer*, 559 S.W.2d 785, 786 (Tenn. 1977). The additional evidence is supplied by the testimony of the State's undercover officer that he purchased illegal drugs from Mr. Allen the

previous day. Mr. Allen himself never explained why he possessed such a large amount of cash, and both the administrative judge and the Appeals Division disbelieved Ms. McEwen's explanation regarding the source of these funds.[23] Accordingly, the record contains sufficient evidence to support the Appeals Division's decision to confiscate the $1,505 seized from Mr. Allen.

The State seized large amounts of silver and gold jewelry from a footlocker in Ms. McEwen's closet. One of the officers testified that jewelry of this sort is frequently used to pay for illegal drugs. Ms. McEwen claimed that the pieces of jewelry were either gifts to her fifteen-year-old daughter or part of her own inheritance. However, she provided few specifics regarding when the jewelry was purchased for her daughter or the circumstances surrounding her inheritance. Even though the administrative judge believed Ms. McEwen's testimony about the jewelry, we have already determined that the Appeals Division could appropriately conclude that Ms. McEwen was lying about the jewelry in the same way that she was lying about other property. Accordingly, we have concluded that the State proved that the jewelry had, more likely than not, been used by Ms. McEwen's and Mr. Allen's customers to purchase illegal drugs.

When the authorities searched Ms. McEwen's house, they found a .22 caliber North American Arms revolver in the master bedroom. The weapon contained three live rounds. One of the officers testified that weapons were commonly seized along with illegal drugs because it was a common practice for drug dealers to keep firearms, presumably to enable them to protect the drugs and money earned from the sale of drugs. Ms. McEwen provided little specific information regarding when she purchased the revolver, but she insisted that she purchased it for self-protection because she and her daughter lived alone. She undermined the credibility of this explanation when she admitted that Mr. Allen, her daughter's father, lived with them sporadically. In light of the fact that Ms. McEwen was a proven drug dealer, the Appeals Division could appropriately conclude that this weapon was subject to forfeiture.

Ms. McEwen claimed that the 1994 Chevrolet pickup truck was purchased on December 1, 1997 for $5,000 in cash. She insists that the State failed to prove by a preponderance of the evidence that proceeds from the sale of illegal drugs were used to purchase this truck. Because the State presented evidence of only eight drug transactions during late 1997 for far less than $5,000, Ms. McEwen asserts that the truck must have been purchased with legitimate income. We have already pointed out that Ms. McEwen's testimony regarding the extent of her and Mr. Allen's legitimate income is not believable. In addition, the State is not required to prove which specific illegal transaction provided the funds to purchase a particular item of property. It is sufficient to prove that proceeds of illegal drug sales were the most likely source of the funds used to purchase the seized property. *See United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1440 (11th Cir. 1991); *United State v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990). This record supports a conclusion that Ms. McEwen and Mr. Allen sold illegal drugs on more than eight occasions during late 1997 and that they used the proceeds from these transactions to purchase the truck. Accordingly, we find that the

[23]Ms. McEwen claimed that Mr. Allen had sold a truck to her employer for $1,500. However, her employer did not corroborate this story when she testified, and Ms. McEwen did not produce any documents, such as a bill of sale or title, to corroborate her testimony.

State's evidence is sufficient to support the Appeals Division's decision to confiscate the 1994 Chevrolet pickup truck.

Finally, Ms. McEwen insists that she purchased the 1996 Yamaha scooter for her daughter in December 1997 using funds that she had borrowed from the Bank of Goodlettsville. While the record contains evidence that Ms. McEwen borrowed $3,130.00 from the Bank of Goodlettsville on November 19, 1997, it also reveals that she purchased a large screen television nine days later for $3,116.82 in cash. This evidence provides the trier-of-fact with a reasonable basis to disbelieve Ms. McEwen's testimony regarding the source of the funds used to purchase the scooter. The undisputed evidence that Ms. McEwen and Mr. Allen were selling drugs illegally during this period of time, coupled with the absence of other credible evidence regarding the sources of Ms. McEwen's legitimate income, provided the Appeals Division with sufficient evidence to conclude that the scooter had been purchased with the proceeds of illegal drug transactions.

## V.

Like the trial court, we have concluded that the Appeals Division did not act arbitrarily and capriciously by disagreeing with the administrative judge's credibility determinations. We have also concluded that the State proved by a preponderance of the evidence that the $1,960 in currency, the various pieces of jewelry, the North American Arms .22 caliber pistol, the 1994 Chevrolet pickup truck, and the 1996 Yamaha scooter seized at the residence of Teresa McEwen on December 5, 1997 were subject to forfeiture under Tenn. Code Ann. § 53-11-451(a)(6)(A). Accordingly, we affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Teresa McEwen and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

-12-