# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 27, 2014 Session

## ROBERT KOSCINSKI v. HAMILTON COUNTY TENNESSEE, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 130041     Jeffrey M. Atherton, Chancellor**

---

**No. E2014-00097-COA-R3-CV-FILED-OCTOBER 31, 2014**

---

This appeal arises from the termination of Robert Koscinski ("Koscinski") from his employment as a corrections officer with the Hamilton County Sheriff's Office. Koscinski had been found to be unfit for duty based upon a psychological evaluation. Koscinski appealed his termination to the Hamilton County Sheriff's Civil Service Board ("the Board"). The Board upheld Koscinski's termination. Koscinski filed an application for writ of certiorari in the Chancery Court for Hamilton County ("the Trial Court"). After hearing arguments, the Trial Court entered an order denying Koscinski's writ of certiorari. Koscinski timely appealed to this Court. We find and hold that the Board applied the correct legal standard, and that the Board's factual findings were supported by substantial and material evidence. We affirm the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

Stevie N. Phillips, Chattanooga, Tennessee, for the appellant, Robert Koscinski.

R. Dee Hobbs, Chattanooga, Tennessee, for the appellees, Hamilton County, Tennessee, and, the Hamilton County Sheriff's Office.

**OPINION**

**Background**

Koscinski was a police officer with the New York City Police Department for over 20 years. Koscinski retired from the NYPD, and, in 2004, moved to Hamilton County, Tennessee. Koscinski was hired by the Hamilton County Sheriff's Office in 2004 where he worked as a corrections officer.

Koscinski's tenure as a corrections officer was satisfactory for a period. Koscinski, however, developed misgivings about some of the practices at the jail and his fellow officers, and, to an extent, these misgivings were mutual. Koscinski was moved from one supervisor to another in an attempt to alleviate his concerns. Another issue emerged. Koscinski apparently was of the view that Masons[1] dominated the jail and were blocking his career advancement.

In March 2012, the incident occurred that would spark the course of events setting this case in motion. Koscinski was attempting to search an inmate. The inmate resisted the search, and Koscinski shoved the inmate against a wall in a bid to restrain him. Another officer, Carl Young, intervened and pulled Koscinski away from the inmate. In the process, the inmate struck Koscinski. Koscinski was disturbed deeply by this act of his fellow officer, believing it had lowered his credibility in the eyes of the jail inmates. A few days after the incident, Koscinski spoke to Young about what had transpired. Koscinski told Young that, had this occurred in New York, Young would have been physically harmed for intervening against a fellow officer the way he did.

Koscinski was suspended without pay and sent to licensed counselor Ben Miller ("Miller"). Miller found Koscinski cooperative and engaged him in a number of follow-up visits. Miller did not recommend that Koscinski stop working. Nevertheless, Deputy Chief of Corrections Ron Parson recommended that Koscinski undergo a fitness for duty evaluation.

In April 2012, Dr. Donald L. Brookshire ("Dr. Brookshire"), a psychologist, submitted to the Sheriff a fitness for duty evaluation regarding Koscinski. Dr. Brookshire's evaluation specifically found Koscinski then psychologically unfit to perform his duties. The evaluation noted that Koscinski suffered mild to moderate depression as well as a minimal level of anxiety. The evaluation also noted a clinical profile of Koscinski consistent with serious psychological problems associated with an overcontrolled person who uses denial and

---

[1]Masons, or Freemasons, are members of a historic organization.

repression to deal with conflicts.[2]  In June 2012, a due process hearing was held in the Koscinski matter.  Dr. Brookshire testified.  The following exchange occurred:

> Mr. Tidwell:  If you can say, is there some way to estimate how long treating the depression would take?  I assume that would involve psychotherapy and some sort of medication.  But is there some way to approximate how long that might take to deal with that?
>
> Dr. Brookshire: I think that's right.  I think it would take medication and psychotherapy.  Psychotherapy, especially because he doesn't have any real good support system right now, a good therapist would become that support for him and kind of fill that void, or he could, hopefully.
>
> Medication often can, within four to six weeks, if the person is going to be responsive to the medication, and everybody is not, but many people have marked improvement in depression in four to six weeks.
>
> Mr. Tidwell: Can you say whether or not alleviating the depression or modifying it would make [Koscinski] competent to go back to work as a jailer at this point or would you have to reevaluate him?
>
> Dr. Brookshire: I can't make a prediction like that.  I don't know what his response to treatment, what the treatment would be.  I don't know.

Based upon Dr. Brookshire's evaluation, Sheriff Jim Hammond terminated Koscinski at the end of the due process hearing.

Koscinski appealed the Sheriff's decision to the Board.  The Board conducted its own hearing in November 2012.  The Board heard sworn testimony and viewed a host of exhibits.  During his testimony, Sheriff Hammond answered in the affirmative when asked if his decision to terminate Koscinski was based on Dr. Brookshire's evaluation:

> It was.  When I heard the facts on this case, after the psychological was presented at the Loudermill hearing, my decision was based on nothing more than I agreed that we had a professional doctor who was making recommendations.  I at that point had to evaluate the safety and security of, of not only my correctional officers, but the Hamilton County Sheriff's Office in

---

[2]Deeming it unnecessary to the disposition of this appeal, we decline to quote directly from the evaluation, which contains detailed information about Koscinski's personal life and condition.

general, and that's the basis upon which I made my finding.

When asked why it was reasonable to pursue corrective action regarding Koscinski in the first place, Sheriff Hammond testified: "I think the reasonableness of these - - of this evaluation was based on one thing, that there was an alarm by the totality of everything, including these memos, that said we better take a special look at this case." At the conclusion of the Board's hearing, the Board voted to sustain the Sheriff's termination of Koscinski.

In January 2013, Koscinski filed an application for writ of certiorari in the Trial Court. The Trial Court heard oral arguments from the parties. In December 2013, the Trial Court entered its memorandum opinion and order. In its order, the Trial Court found and held that the Board applied the correct legal standard under its operating manual and that substantial and material evidence supported the Board's decision to sustain the termination. Koscinski timely appealed to this Court.

## Discussion

Although not stated exactly as such, Koscinski raises two issues on appeal: 1) whether the Board applied the wrong legal standards; and, 2) whether the Board's factual findings were supported by substantial and material evidence. Koscinski also requests his attorney's fees on appeal.

Tenn. Code Ann. § 4-5-322 governs this appeal from the decision of a civil service board. This statute provides as relevant:

> (g) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court.
>
> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

(i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

(j) The reviewing court shall reduce its findings of fact and conclusions of law to writing and make them parts of the record.

Tenn. Code Ann. § 4-5-322 (g) - (j) (2011).

This Court previously has discussed the standard of review in civil service board cases such as this as follows:

> In cases where a commission's jurisdiction, authority, and procedures are not at issue, Tenn. Code Ann. § 4-5-322(h)(4), (5) require the courts to review the commission's decision using a three-step analysis. First, the court must determine whether the commission has identified the appropriate legal principles applicable to the case. Second, the court must carefully examine the commission's factual findings to determine whether they are supported by substantial and material evidence. Third, the court must examine how the commission applied the law to the facts. *Armstrong v. Metro. Nashville Hosp. Auth.*, No. M2004-01361-COA-R3-CV, 2006 WL 1547863, at *2 (Tenn. Ct. App. June 6, 2006) (No Tenn. R. App. P. 11 application filed); *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005).

> While Tenn. Code Ann. § 4-5-322(h) does not explicitly define what "substantial and material evidence" is, the courts have interpreted it as requiring something less than a preponderance of the evidence but more than a scintilla or glimmer. *Dickson v. City of Memphis Civil Serv. Comm'n,* 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005); *Gluck v. Civil Serv. Comm'n,* 15

-5-

S.W.3d at 490; *Wayne County v. Tenn. Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988). Substantial and material evidence is the amount of relevant evidence that a reasonable person would require to reach a rational conclusion. Thus, substantial and material evidence furnishes a reasonably sound basis for the commission's decision. *Clay County Manor, Inc. v. Dep't of Health & Env't*, 849 S.W.2d 755, 759 (Tenn. 1993); *Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984); *Bobbitt v. Shell*, 115 S.W.3d 506, 510 (Tenn. Ct. App. 2003).

Because the application of the law to the facts is a highly judgmental process involving mixed questions of law and fact, the court's review of a commission's decision is limited and deferential to the commission. *Armstrong v. Metro. Nashville Hosp. Auth.*, 2006 WL 1547863, at *2. The courts may neither reweigh the evidence nor substitute their judgment for the commission's, even if the evidence could support a conclusion different from the one reached by the commission. Tenn. Code Ann. § 4-5-322(h)(5)(B); *City of Memphis v. Civil Serv. Comm'n,* 216 S.W.3d at 316; *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 693 (Tenn. 1996); *Eatherly Constr. Co. v. Tenn. Dep't of Labor & Workforce Dev.,* 232 S.W.3d 731, 735 (Tenn. Ct. App. 2006). Rather, the courts must determine whether a reasonable person could appropriately have reached the same conclusion reached by the commission, consistent with a proper application of the controlling legal principles. *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d at 820.

Commission decisions that are not supported by substantial and material evidence are necessarily arbitrary and capricious, as are decisions with adequate evidentiary support that are based on a clear error in judgment. *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d at 316. In its broadest sense, the arbitrary and capricious standard in Tenn. Code Ann. § 4-5-322(h)(4)

> requires the court to determine whether the administrative agency has made a clear error in judgment. An arbitrary or capricious decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

*City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d at 316 (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n,* 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993) (internal citations omitted)).

*Miller v. Civil Serv. Comm'n of Metro. Gov't of Nashville and Davidson Cnty.*, 271 S.W.3d 659, 664-65 (Tenn. Ct. App. 2008) (footnote omitted).

We first address whether the Board applied the wrong legal standards. Koscinski argues on appeal that certain comments by Board members suggest that they felt they lacked the authority to overrule the Sheriff. For instance, Chairman Pippin at one point stated: "Well, our question is do we have the right to overrule the sheriff on, on an employment situation like that where it is actually a ruling that's come down saying that this individual is unfit." Koscinski also points to the County Attorney's asking the Board to take judicial notice of Tenn. Code Ann. § 41-4-144 (a)(9), which provides that corrections officers must be free from impairments set forth in the Diagnostic and Statistical Manual of Mental Disorders. Tenn. Code Ann. § 41-4-144(b)(3), however, exempts corrections officers hired before July 1, 2006.[3] Koscinski began working for Hamilton County in 2004. According to Koscinski, wrongly introducing Tenn. Code Ann. § 41-4-144 to the Board's attention served to further the Board's misunderstanding of its available options.

With respect to the proper standard for the Board, other statements from the Board members reflect that they did, in fact, apply the proper standard. Board member Benson stated that "the only reasons to overturn the sheriff's decision would be for the political reasons . . . personal . . . or if the sheriff has acted arbitrarily in the interpretation of cause." Chairman Pippin stated toward the end of the Board hearing that ". . . we would need to be convinced that there was a political reason, a personal reason, or a reasonable, reasonable doubt that this man was sent and evaluated for reasons other than his ability to function in the sheriff's department." The Board members also extensively questioned witnesses and took an active part in the proceedings. There is no hint that the Board regarded itself as a mere rubberstamp. On the contrary, the record shows clearly that the Board closely considered the details of the case before finally arriving at its decision. Any initial questions or concerns about authority were resolved correctly by the time the Board decided. The Board properly applied the standard outlined in its operating manual[4], and, as pertinent to this case, considered whether the Sheriff acted arbitrarily in terminating Koscinski's employment.

---

[3]Tenn. Code Ann. § 41-4-144(b)(3) (2014) provides: "This section shall not apply to any jail administrator, jailer, corrections officer or guard hired by any municipality, county, or political subdivision of this state prior to July 1, 2006." We note that Tenn. Code Ann. § 41-4-144(a)(9), requiring the freedom of impairment for corrections officers, was modified in 2013. However, neither version applies to Koscinski, as he was hired on as a corrections officer in 2004.

[4]The transcripts of the Board hearing reflect that the standard (reviewing a decision for political, personal, or arbitrary reasons) came from the Board's operating manual, and there appears to be no disagreement among the parties that this was the relevant standard. The Trial Court also found this standard to be applicable. Naturally, the parties on appeal disagree as to the results of applying that standard.

In his brief on appeal, Koscinski cites to the case of *Hoback v. City of Chattanooga*, No. E2011-00484-COA-R3-CV, 2012 WL 2974762 (Tenn. Ct. App. July 20, 2012), *no appl. perm. appeal filed*. In *Hoback*, a case involving the termination of a police officer found unfit for duty, we affirmed the trial court's holding that the City Council applied the wrong legal standard and remanded the case with instructions. The City Council had applied Tenn. Code Ann. § 38-8-108, apparently at odds with an agreement reached between Tennessee and the United States regarding conflicts between Tennessee law and the Americans with Disabilities Act. *Id*. at *5. We find *Hoback* inapposite to this case as the Board did not apply the above mentioned disputed legal principles. Rather, the Board acted properly according to its operating manual, and, as pertinent, determined whether the Sheriff acted arbitrarily in terminating Koscinski. More fundamentally, it does not appear from the record that the Board was under the impression that it was a foregone conclusion to terminate Koscinski based on any rigid medical criteria, but rather considered the particular circumstances of the case and reached its decision.

Related to this issue, we also address the introduction to the Board of Tenn. Code Ann. § 41-4-144. Koscinski is exempt from the requirements of this statute as he was hired prior to July 1, 2006. Therefore, neither the Board nor Trial Court should have relied upon this statute in relation to Koscinski. While the County Attorney read the statute aloud to the Board, it does not appear from the record that the Board relied on this statute in any way in reaching its decision. The totality of the record reflects that the Board determined that, based primarily on Dr. Brookshire's evaluation and attendant circumstances, the Sheriff had not acted arbitrarily in firing Koscinski. The Trial Court did cite Tenn. Code Ann. § 41-4-144 in its memorandum opinion and order. We, however, do not rely upon Tenn. Code Ann. § 41-4-144 in affirming the Trial Court as to this issue, because that statute does not apply to Koscinski. We conclude that the Board applied the correct legal standards.

We next address whether the Board's factual findings were supported by substantial and material evidence as found by the Trial Court. Koscinski asserts that his termination was based solely on Dr. Brookshire's evaluation and, as such, failed to rise to the level of substantial and material evidence necessary to support termination. According to Koscinski, Dr. Brookshire's testimony at the due process hearing was that Koscinski would be ready to work in four to six weeks. Koscinski argues that he should have been given time to rectify his problems, with some sort of accommodation worked out such that he could remain employed with the Sheriff's Office.

As discussed above, Dr. Brookshire's testimony was not exactly as characterized by Koscinski but rather was that some patients may respond to medication for depression in four to six weeks. Dr. Brookshire did not testify that Koscinski *would* be fit for duty in four to six weeks. On the contrary, Dr. Brookshire testified that he could make

no such prediction. Dr. Brookshire's evaluation of Koscinski also contained findings separate and apart from depression and anxiety. The evaluation specifically found Koscinski then to be unfit for duty and found certain personality traits of concern in Koscinski such as an overcontrolled personality with difficulty in handling stressful situations. Taken in its entirety, the evidence presented to the Board rises to the level of substantial and material evidence sufficient to sustain Koscinski's termination. Further, we find, as did the Trial Court, that the Board's decision was not based on a clear error in judgment.

We emphasize that our Opinion should not be construed to mean that a finding of anxiety or depression somehow serves as *ipso facto* grounds for termination of corrections officers or comparable officials. In this case, there is an uncontroverted psychological evaluation that specifically found the officer unfit for duty. There was, and is, no guarantee or even proof of a likelihood that medication would alleviate Koscinski's depression or anxiety and render him fit for duty. Perhaps most significantly, the evaluation references certain personality traits of concern that could be exacerbated by depression but that are separate and distinct from depression. Finally, we cannot ignore the attendant circumstances leading to the evaluation, referred to in the evaluation itself, and all of which were presented as evidence before the Board. Given the limited standard of review we must apply, and, in light of the specific factual circumstances of this case culminating in an evaluation finding Koscinski unfit for duty, we conclude that substantial and material evidence supported the factual findings of the Board, and we affirm the judgment of the Trial Court.

As a final matter, we decline to award attorney's fees to any party in this appeal.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Robert Koscinski, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE