IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 3, 2011 Session

**BOB KEITH WATSON**

v.

**TENNESSEE DEPARTMENT OF SAFETY**

**Appeal from the Chancery Court of Davidson County**
**No. 09-485-IV    Walter C. Kurtz, Senior Judge**

---

**No. M2010-02193-COA-R3-CV - Filed September 30, 2011**

---

This appeal involves the forfeiture of personal property seized in connection with a criminal investigation. The petitioner's home was searched pursuant to a search warrant executed on his home. Items of his personal property were seized by authorities, and later forfeited and sold. The petitioner property owner filed this lawsuit, arguing that administrative protocols regarding forfeiture proceedings were not followed and contesting the forfeiture of his personal property. The administrative law judge held that the forfeiture and sale were valid, and the property owner appealed to the trial court. The trial court affirmed. The property owner now appeals to this Court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

William Kennerly Burger, Murfreesboro, Tennessee, for Petitioner/Appellant Bob Keith Watson

Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen, Associate Solicitor General and Benjamin A. Whitehouse, Assistant Attorney General, for Respondent/Appellee Tennessee Department of Safety

# OPINION

## FACTS AND PROCEEDINGS BELOW

In 2000, Petitioner/Appellant Bob Keith Watson ("Watson") resided in Madisonville, Monroe County, Tennessee. At that time, he was unemployed.

In 2000, the Monroe County Sheriff's Department ("Sheriff's Department") received information that Watson was involved in drug trafficking and commenced a lengthy investigation. During the course of the investigation, an informant working with the Sheriff's Department made nine controlled methamphetamine purchases from Watson's residence. On January 25, 2001, the Sheriff's Department issued and executed a search warrant on Watson's premises. In and around his home they found and seized a large amount of methamphetamine and associated drug paraphernalia.

During the course of the January 25, 2001 search, the authorities who searched Watson's home also seized numerous items of personal property. These included currency, tools, weapons, sixteen vehicles, lawn care equipment, boots, coffee pots, flashlights, and other miscellaneous belongings. All told, officers seized approximately 240 items of personal property with an estimated value of $400,000. The items were stored in various locations, including the county impound lot, warehouses, and on the premises of a wrecker service owned by a relative one of the Sheriff's department officers. The same day, Watson was arrested and charged with various drug related charges by Scott Wilson ("Officer Wilson"), then director of Narcotics & Special Operations for the Monroe County Sheriff's Department.

After further investigation, the Sheriff's Department took the position that the personal items seized from Watson's home were proceeds of Watson's illegal activities, including drug trafficking. After the seizure, on February 16, 2001, Notices of Property Seizure were issued; they were served on Watson's attorney at the time on February 23, 2001. Also post-seizure on February 16, 2001[1] and March 2, 2001, Drug Asset Forfeiture Warrants for the seized property were obtained.

At the same time that the Sheriff's Department was investigating Watson, the Federal Bureau of Investigation ("FBI") was investigating him as well, for similar drug trafficking offenses

---

[1] Each forfeiture warrant dated February 16, 2001 also contains an extension order signed by Monroe County Criminal Court Judge Steve Bebb, dated February 2, 2001. These extension orders granted officers ten additional days to seek forfeiture warrants based on circumstances justifying the exception to the five working day requirement under Tenn. Code Ann.§ 44-33-204(b).

and for involvement in a vehicle "chop-shop" operation.[2] Watson was subsequently arrested and charged on five federal counts of drug distribution, possession, and conspiracy to manufacture and possess methamphetamine with the intent to distribute, as well as several charges related to the chop-shop operation.

The record indicates that, on May 22, 2001, the state charges against Watson were apparently dropped. The record does not show why the state charges were dropped.

On December 20, 2001, Watson pled guilty to five federal drug charges and to eleven charges related to tampering with motor vehicle VIN numbers. As a result, Watson began a lengthy incarceration in federal prison in Alabama.[3]

On November 6, 2004, the items of personal property seized from Watson's home were sold at a public auction. It is undisputed on appeal that the sale of Watson's personal property occurred prior to any hearing authorizing such a sale, in contravention of Tennessee Code Annotated § 40-33-210(d). The State offers no explanation in the record of why these items were sold prematurely. The record contains no documentation or itemization concerning the value or disposition of the property.

After the auction of the property, an initial forfeiture hearing was held on November 19, 2004.[4] During this hearing, Watson represented himself by telephone from federal prison. At the hearing, Administrative Law Judge ("ALJ") Randall LaFevor heard testimony from Watson and Officer Wilson. Officer Wilson testified about the seizures that took place at Watson's home in January 2001.

On January 22, 2005, the ALJ issued an initial order concerning the disposition of the seized property. In this initial order, the ALJ found that the State had established by a preponderance of the evidence that Watson had been involved in drug trafficking for several years prior to his January 2001 arrest based on the nine encounters Watson had with the Sheriff's Department's confidential informant during that time. The ALJ found that Watson had offered no evidence to refute the State's evidence that, at the time his property was

[2]Chop shop is defined as "a garage where stolen automobiles are dismantled so that their parts can be sold separately." *Black's Law Dictionary* 234 (7th ed. 1999).

[3]The record does not show how long Watson was incarcerated, but he remained incarcerated in federal prison during the pendency of the proceedings below.

[4]A hearing before Administrative Law Judge Randall LaFevor was convened on July 8, 2004, but was postponed so that the ALJ could review Watson's recently-filed pleadings.

seized, Watson had neither a legal source of income nor an explanation for how he had been able to accumulate such valuable property in the absence of a legal source of income. The ALJ found that the State had established a "sufficient nexus" between Watson's illegal drug activities and the seized property to warrant a conclusion that the property was derived from Watson's drug enterprise. On April 29, 2005, this initial order was adopted and affirmed by the Appeals Division of the Tennessee Department of Safety.

For reasons not affecting this appeal that we need not detail here, Watson's appeal of the administrative forfeiture order was delayed for several years. Eventually, on July 21, 2010, Senior Judge Walter C. Kurtz was appointed to preside over the case, and he immediately scheduled a hearing, which took place on September 17, 2010. As with the hearing before the ALJ, Watson participated in the hearing before Judge Kurtz by telephone from federal prison. By this time, he was represented by counsel. The appellate record does not include either a transcript or a statement of the evidence from the hearing before Judge Kurtz.

A few days later, on September 21, 2010, Judge Kurtz issued a memorandum opinion and order in the cause. In the memorandum opinion, the trial court addressed the issues argued by Watson at the hearing. The trial court deflected Watson's first argument, that his property could not be forfeited because he was not convicted of violating state drug laws, citing ***Ramsey v. State***, No. M2006-01172-COA-R3-CV, 2007 WL 1237690, at *2 (Tenn. Ct. App. Apr. 27, 2007).[5] Watson's argument that the seizure of his property was unconstitutional was rejected because Watson failed to timely file a motion to suppress prior to the administrative hearing, as required by Department of Safety regulations. Next, Watson contended that the fact that the property was sold prior to the administrative forfeiture hearing deprived the Department of Safety of jurisdiction over the forfeiture. Judge Kurtz recited that the State conceded that the State's action in selling Watson's property prior to the hearing violated Tennessee's statutes. Nevertheless, Judge Kurtz found that Watson had cited no authority establishing that the premature sale divested the Department of jurisdiction over the forfeiture.

Finally, the trial court addressed Watson's argument that the record does not support the seizure because it does not show which items were related to Watson's drug activities and which were related to his theft activities, *i.e.*, the "chop shop." Watson noted that only the state drug statutes authorize forfeiture of the offender's property.

---

[5]We note parenthetically that ***Ramsey v. State*** is a Memorandum Opinion, pursuant to Rule 10 of the Rules of the Court of Appeals of Tennessee, and is therefore not to be cited. ***Ramsey***, 2007 WL 1237690, at *1.

The trial court first reviewed the testimony of the narcotics officer, Officer Wilson, outlining the evidence of Watson's illegal activities and the fact that Watson was unemployed and had no legal means of support. It then characterized as "speculation" Watson's assertion that the property may not be connected to his drug activity. The trial court stated that Watson had not established through cross examination or testimony that any of the seized property was legitimately procured or was related to his theft activities as opposed to his drug activities. Based on the administrative record, the trial court found that it could not "say that the factual or legal conclusions of the administrative law judge were wrong," under the standards set forth in Tennessee Code Annotated §§ 40-33-213(a) and 4-5-322(h). Watson now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Watson challenges the trial court's holding that the record supports the conclusions that Watson's property was forfeited in accordance with the procedural requirements set forth in Tennessee Code Annotated § 40-33-201, that the seized property was subject to the lawful "disposition" under Tennessee Code Annotated § 53-11-201 *et seq.*, and that the seized property was properly inventoried, disposed of, or accounted for pursuant to Tennessee Code Annotated § 40-17-118.

In response, the State argues that the record shows that Watson had engaged in numerous drug transactions, had illegal drugs in his possession at the time the seizure occurred, and had amassed substantial property without any visible means of support. The State maintains that the trial court correctly held that premature sale of Watson's property had no effect on the administrative forfeiture proceedings, and that the Department of Safety was under no obligation to return the seized property to Watson following the dismissal of the drug charges in state court, in light of the fact that Watson pled guilty to federal drug charges.

On appeal, the standard of review for the appellate court is the same as that of the trial court. In *Urquhart v. Tenn. Dep't of Safety*, No. M2006-02240-COA-R3-CV, 2008 WL 2019458, at *4 (Tenn. Ct. App. May 9, 2008), the Court explained:

> Judicial review of forfeiture proceedings is primarily governed by Tenn. Code Ann. § 4-5-322 of the Uniform Administrative Procedures Act. Subsection (h) of that statute provides that
>
> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

* * *

A variation from the above standard applies in forfeiture cases, which is set out in Tenn. Code Ann. § 40-33-213. That statute explicitly refers to Tenn. Code Ann. § 4-5-322(h) but declares that in forfeiture cases "[t]he reviewing court shall use the preponderance of evidence standard in determining whether to sustain or reverse the final order of the applicable agency. The burden of proof on review shall be the same as in the proceedings before the applicable agency." . . .

Thus, the trial court must examine the evidence under the preponderance of the evidence standard rather than the more deferential "substantial and material evidence" standard. The appellate court must in turn follow the same standard as the trial court when reviewing administrative proceedings under Tenn. Code Ann. § 4-5-322.

*Id.* at *4-5. The analytical framework under Sections 4-5-322 and 40-33-213(a) has been capsulized as follows:

Our review of forfeitures [under T.C.A. §§ 4-5-322 and 40-33-213(a)] involves a three stage process. *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 820-21 (Tenn. Ct. App. 2005). First, we must decide whether the agency properly identified the appropriate legal principles. *Id.* Second, we review the agency's findings of fact to determine whether such findings are supported by a preponderance of evidence. *Id.* Finally, we determine whether the agency properly applied the governing legal standards to the facts. *Id.*

*Brown v. Tenn. Dept. of Safety*, No.M2010-01040-COA-R3-CV, 2010 WL 5541185, at *1 (Tenn. Ct. App. Dec. 23, 2010), *perm. app. den.,* May 26, 2011.

**ANALYSIS**

The authority of State officials to seize and cause the forfeiture of private property carries with it an obligation to insure that the power is not abused. ***Redd v. Tenn. Dep't of Safety***, 895 S.W.2d 332, 335 (Tenn. 1995). Forfeitures are not favored by the law and statutes authorizing forfeitures are to be strictly construed. ***Id.*** at 335.

### *Validity of Forfeiture Warrant*

On appeal, Watson argues that, contrary to the requirements in Tennessee Code Annotated § 40-33-204(b),[6] the Sheriff's Department failed to seek a forfeiture warrant on his property within five days of the January 25, 2001 seizure, and failed to provide him with documentation of the ex parte forfeiture hearing. It is undisputed that the seizure occurred on January 25, 2001, and each forfeiture warrant is dated no earlier than February 16, 2001. Each forfeiture warrant contains an "extension order" signed by Monroe County Criminal Court Judge Bebb,[7] stating: "Based on the Seizing Officer's sworn statements as to extraordinary circumstances justifying exception to the 'five (5) working days requirement,' I grant up to ten (10) additional days through February 16, 2001 to seek a Forfeiture Warrant." The extension orders were signed on February 2, 2001, slightly more than five working days[8] after the seizure of Watson's property.

---

[6]This statute states:

> The officer making the seizure shall apply for a forfeiture warrant by filing a sworn affidavit within five (5) working days following the property seizure. The forfeiture warrant shall be based upon proof by affidavit and shall have attached to it a copy of the notice of seizure. The hearing on the application for a forfeiture warrant shall be ex parte and shall be recorded. It is the duty of the court to maintain the recording. Certified copies of the proceeding shall be made available to any party requesting them, and the same shall be admissible as evidence. The affidavit in support of a forfeiture warrant shall be sworn to and state the following: (1) The legal and factual basis making the property subject to forfeiture; . . .

Tenn. Code Ann. § 40-33-204(b) (2006).

[7]Watson alleges that Judge Bebb's son, Andy Bebb, was an officer in the narcotics unit and accompanied Officer Wilson in the search of Watson's home on January 25, 2001. (TR Vol. III at 35–36).

[8]A definition of the term "working days" is not included in the forfeiture statutes. For the purpose of our analysis, we have assumed that the term has a meaning similar to the description in Rule 6.01 of the Tennessee Rules of Civil Procedure which excludes "intermediate Saturdays, Sundays and legal holidays .
(continued...)

Forfeiture warrants are addressed in Tennessee Code Annotated § 40-33-204. Subsection (b) of the statute mandates that "[t]he officer making the seizure *shall apply* for a forfeiture warrant by filing a sworn affidavit *within five (5) working days* following the property seizure."[9] Tenn. Code Ann. § 40-33-204(b) (2006) (emphasis added). It is undisputed that the seizing officers did not obtain the forfeiture warrants within five working days, but instead obtained extension orders on February 2, 2001. Such extension orders are addressed in subsection (c)(2), which states:

> (c) If the seizing officer asserts to the judge that the officer was unable to determine the owner of the seized property or whether the owner's interest is subject to forfeiture within the required five-day period, the judge may grant up to ten (10) additional days to seek a forfeiture warrant if the judge finds that the seizing officer has:
>
> > (A) Exercised due diligence and good faith in attempting to determine the owner of the property or whether the owner's interest is subject to forfeiture; and
> >
> > (B) Made a factual showing that because the existence of extraordinary and unusual circumstances an exception to the five-day forfeiture warrant requirement is justified.

Tenn. Code Ann. § 40-33-204(c)(2) (2006). The language in the statute is ambiguous on whether the *extension order* must be obtained within five working days after the seizure of the subject property. Watson does not address this statute, preferring to rely only on the statement in Section 40-33-204(b) that the officer is to apply for the forfeiture warrant within five days. In the absence of argument or authority that the extension order must be obtained within five working days, we decline to interpret Section 40-33-204(c)(2) to include such a requirement.

---

[8](...continued)
. . ." Tenn. R. Civ. P. 6.01.

[9]Section 40-33-204(b) also states that the ex parte forfeiture hearing "shall be recorded" and that certified copies of it "shall be made available to any party requesting them." T.C.A. § 40-33-204(b). We find no copy of the record of the forfeiture hearing in the appellate record. Watson alleges in his appellate brief that his requests for a record of the forfeiture hearing were denied, but points us to no place in the appellate record showing a timely request for such a record. We are not obliged to search the appellate record for it. Rather, under Rule 27(a)(6) of the Tennessee Rules of Appellate Procedure, Watson is obliged to include references to the record in his brief.

### *Premature Sale of Property, Accounting of Proceeds*

It is undisputed that Watson's personal property was sold on November 6, 2004, prior to the forfeiture hearing mandated by Tennessee Code Annotated § 40-33-210. The State concedes that the premature sale of Watson's property was improper and in violation of the stay provided for in Tennessee Code Annotated § 39-11-708(c). In his appellate brief, Watson argues the impropriety of the premature sale and argues, as he argued at the trial court level, that the premature sale deprived the Department of Safety of jurisdiction and made the administrative proceedings a nullity. As noted by the trial court below, Watson points to no authority supporting his theory or detailing the consequences of a premature sale of seized property. We agree with the trial court below that, had Watson prevailed in the forfeiture proceedings, he would have had a claim against the Department of Safety under Tennessee Code Annotated § 40-33-215 for the wrongful deprivation of his property. However, we find no support for Watson's argument that the premature sale of the property left the Department of Safety without jurisdiction. Under the circumstances of this case, we agree with the trial court that this argument must be rejected.

Watson also claims that he requested an accounting of the proceeds from the sale of his property and that he was not provided this information. Watson points to no place in the appellate record showing that he made such a request,[10] and cites no authority for his assertion that he is entitled to such an accounting, unless he had prevailed in the forfeiture proceeding. He cites no authority detailing the consequences of the alleged failure to provide such an accounting. Under these circumstances, this argument must be rejected.

### *Confiscation of Stolen Property, Dismissal of State Charges*

Watson argues that the State was not authorized to seize or confiscate his property under Tennessee Code Annotated § 40-17-118 because there is no evidence that any of the property was stolen or related to illegal drugs. In support, he cites *Cruse v. City of Columbia*, 922 S.W.2d 492 (Tenn. 1996).

We agree with the trial court that neither Section 40-17-118 nor *Cruse* are applicable to the case at bar. In *Cruse*, police had seized several items of jewelry, based on their suspicion that the subject jewelry had been stolen. *Cruse*, 922 S.W.2d at 494. The theft charges

---

[10]The record cite furnished by Watson to support his assertion that he asked for an itemization of the proceeds of the sale does not support his assertion. The document at the page in the record cited by Watson is an order by the ALJ denying Watson's "Emergency Motion for Production of Property for Inspection." The order does not give the date of the "Emergency Motion," but the ALJ order is dated March 12, 2005, well after the sale of the property.

against Cruse were eventually dismissed, but by that time, the jewelry was no longer in the possession of government officials. *Id.* Under Section 40-17-118, Cruse was deemed to have a cause of action for the value of the confiscated jewelry. The *Cruse* Court determined that Section 40-17-118 gave rise to a separate cause of action for the return of confiscated property and for damages in the event the property was damaged or destroyed. *Id.* at 496.

In the instant case, Watson's property was not seized or confiscated as suspected stolen property. Rather, Watson's property was seized based on the allegation that the property was procured in exchange for a controlled substance or with proceeds traceable to such an exchange, pursuant to Tennessee Code Annotated § 53-11-451. Therefore, we agree with the trial court that both Tennessee Code Annotated § 40-17-118 and *Cruse* are inapposite. This argument must be rejected.

Watson also claims that the Department of Safety lost jurisdiction over the forfeiture proceedings after the dismissal of the state drug charges against him. Once the state drug charges were dismissed, Watson contends, the seized property could not be linked to any violation of Tennessee drug laws, and thus was not subject to forfeiture. Watson contends that his guilty plea on federal drug charges cannot support the forfeiture of his property.

We must respectfully disagree. The Department of Safety has broad power to determine whether confiscated property is subject to forfeiture. Tenn. Code Ann. § 53-11-201 (2011); *see also Redd*, 895 S.W.2d at 335. The dismissal of a criminal case does not divest the authority of the Commissioner of Safety to determine whether personal property that has been seized under Tennessee's drug statutes should be forfeited. *Hargrove v. State*, No. M2004-00410-COA-R3-CV, 2005 WL 2240970, at *2 (Tenn. Ct. App. Sept. 15, 2003). This argument must be rejected as well.

Finally, Watson argues vigorously that the State did not meet its burden of proving by a preponderance of the evidence that the seized property was related to his illegal drug activity as opposed to his illegal theft. Watson again points to the dismissal of the state drug charges against him, and contends that, in the face of that dismissal, the Department of Safety cannot establish that the seized property was connected to activity that violates state drug laws. Given the lengthy list of items seized, Watson argues, the evidence does not show that all of the items were related to drug activity, instead of resulting from Watson's lawful work or inheritance.

*Preponderance of Evidence*

On appeal, Watson notes that the state drug charges against him were dismissed. From this, he argues that the seized property could not be related to any violation of Tennessee drug laws, and therefore seizure and forfeiture of the property was not authorized under Tennessee statutes. Watson argues that his guilty plea on federal drug charges does not support the seizure or forfeiture of his property. Thus, he contends, the evidence preponderates against the finding that the items of property seized and forfeited were connected to any violation of Tennessee's drug statutes.

Under Tennessee Code Annotated § 53-11-451(a)(6)(A), the State must prove by a preponderance of the evidence that each item seized was either "furnished, or intended to be furnished, in exchange for a controlled substance in violation of the Tennessee Drug Control Act" or that each item was furnished with proceeds traceable to such an exchange.[11] Tenn. Code Ann. § 53-11-451(a)(6)(A) (2008); *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 824 (Tenn. Ct. App. 2005). Thus, the State must establish that each item of the seized property, more likely than not, was exchanged or intended to be exchanged in an illegal drug transaction, or was traceable to such a transaction. *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 824 (Tenn. Ct. App. 2005). Direct evidence,[12] circumstantial evidence,[13] or a combination of the two may be employed by the State to carry its burden. *Id.* at 825.

The Supreme Court's decision in *Lettner v. Plummer*, 559 S.W.2d 785 (Tenn. 1977), is instructive. In *Lettner*, the State attempted to establish that cash found under a mattress in the home of an elderly couple, in close proximity to illegal drugs, was subject to forfeiture. *Id.* at 786. The *Lettner* Court held that it is not necessary for the State to trace each individual item of property to specific drug sales. *Id.* at 787. The claimants proffered testimonial evidence to support their assertion that the seized cash was procured by legitimate means through loans and gifts. *Id.* at 786-87. However, other circumstantial evidence

---

[11] If the State is able to meet this burden with respect to every item seized, the fact that the initial seizure warrant also indicated that the property could be traceable to theft activities becomes irrelevant. *Fuqua v. Armour*, 543 S.W.2d 64, 68 (Tenn. 1976); *see Wood v. United States*, 41 U.S. 342, 359 (1824) ("It is of no consequence, whatsoever, what were the original grounds of the seizure, whether they were well founded or not, if in point of fact the goods are by law subjected to forfeiture.").

[12] Direct evidence is evidence that which, if believed, establishes the main fact at issue without inference or presumption. *State v. Phillips*, 138 S.W.3d 224, 231 (Tenn. Ct. App. 2003).

[13] Circumstantial evidence is evidence of collateral facts and circumstances from which the trier of fact may infer that the main issue is based on reason and common experience. *Phillips,* 138 S.W.3d at 231.

tended to show that the cash was connected to illegal drug activity. *Id.* at 787. The circumstantial evidence included evidence that there was a known drug operation in the claimants' home, several known drug users had visited the home while the seizure was taking place, both defendants had at least one prior drug charge, weapons were in the home, and the elderly couple were both unemployed and without any visible means of support. *Lettner*, 559 S.W.2d at 786. This evidence was deemed sufficient to support the forfeiture. *Id.* at 787.

In light of *Lettner*, we examine the evidence in the November 19, 2004 administrative hearing before Judge LaFevor. Officer Wilson testified that Watson was unemployed with no legal source of income, and that Watson was engaged in illegal drug trafficking at his home during the months leading up to the search of his home and his arrest, including nine transactions with a confidential informant. The items seized from Watson's home included drugs, drug paraphernalia, weapons, and substantial cash.[14] On December 20, 2001, Watson pled guilty to the federal drug charges.

Juxtaposed against Officer Wilson's testimony is the complete absence of any evidence from Watson. While Watson does not have the burden of showing that his property was legitimately procured, once the State offered proof, Watson risked an adverse result by failing to counter the State's proof. At the hearing , Watson expressed frustration that he had no documentary proof of how his property was procured because he was in prison and/or because important legal documents were allegedly "stolen" by law enforcement officers during the search and seizure operation in January 2001. However, Watson was present at the hearing by telephone and was free to testify about how his procurement of the seized items was unrelated to his drug activities, with or without supporting documentation. Watson failed to do so.

After reviewing the evidence in the administrative record, the trial court below held: "On this record, the Court cannot say that the factual or legal conclusions of the administrative law judge were wrong." We agree. Therefore, the trial court's affirmance of the forfeiture order must be affirmed.

---

[14]The list of items seized also included numerous vehicles and tools arguably related to "chop shop" activities.

**CONCLUSION**

The decision of the trial court is affirmed. Costs on appeal are assessed against Appellant Bob Keith Watson, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE