# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 19, 2015 Session

## TENNESSEE WASTEWATER SYSTEMS, INC.
## v. TENNESSEE REGULATORY AUTHORITY

**Appeal from the Tennessee Regulatory Authority**
**No. 14-00041**

_____

**No. M2014-01903-COA-R12-CV – Filed June 30, 2016**
_____

Tenn. R. App. P. 12 petition for review of the decision of the Tennessee Regulatory Authority to revoke Tennessee Wastewater Systems, Inc.'s Certificate of Public Convenience and Necessity. Determining that the revocation of the CCN satisfies the requirements of law, is supported by substantial and material evidence, and is an appropriate and reasonable exercise of the TRA's authority and discretion, we affirm the decision.

**Tenn. R. App. P. 12 Direct Review of Administrative Proceeding; Judgment of the Tennessee Regulatory Authority Affirmed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Henry M. Walker and Patricia Head Moskal, Nashville, Tennessee, for the appellant, Tennessee Wastewater Systems, Inc.

Kelly Cashman-Grams, Nashville, Tennessee, for the appellee, Tennessee Regulatory Authority.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; and Rachel A. Newton, Assistant Attorney General, for the amicus curiae, the Consumer Advocate and Protection Division Office of the Tennessee Attorney General.

C. Mark Troutman, LaFollette, Tennessee, for the amicus curiae, Emerson Properties, LLC.

# OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

Tennessee Wastewater Systems, Inc. ("TWSI") is a public utility which has held a Certificate of Public Convenience and Necessity (CCN) since 1994. The original CCN allowed TWSI to provide wastewater service in the Oakwood Subdivision of Maury County; over the years the CCN has been amended to allow TWSI to operate in other areas. By order entered April 11, 2007 (the "CCN Order"), the Tennessee Regulatory Authority ("TRA") authorized an amendment to TWSI's CCN which would allow TWSI to provide service to The Villages at Norris Lake ("Villages"), a new subdivision in Campbell County. The CCN Order recited:

> TWS[I] states that no contracts have been signed at this point; however, it is the intent of the parties that TWS[I] will own the collection, treatment, and dispersal system and a permanent easement to the property occupied by the system. The estimated contributed capital from the developer[1] is $3,000,000; therefore, limited funding is needed from TWS[I] to construct the initial wastewater systems. TWS[I] is responsible for any future additions to its infrastructure.

TWSI and Land Resource thereafter entered into a maintenance and service contract, and the Tennessee Department of Environment and Conservation ("TDEC") issued TWSI a State Operating Permit (SOP) to operate the wastewater system on February 28, 2007, with an expiration date of February 28, 2012.

Land Resource filed for bankruptcy, and on February 3, 2009, the bankruptcy court entered an order authorizing the sale of Land Resource's assets; Emerson Properties, LLC ("Emerson"), purchased Villages and began developing the subdivision. After purchasing the property, Emerson began to complete the construction of the wastewater system and plant; after unsuccessful negotiations with TWSI, Emerson engaged the Caryville-Jacksboro Utility Commission ("Caryville") to obtain an operating permit for the wastewater system. TDEC issued a SOP to Caryville on July 29, 2011.

On November 16, 2011, TWSI filed a petition with the TRA seeking a declaratory ruling that TWSI had a protected right under Tenn. Code Ann. § 6-51-301(a)(1) to provide wastewater services to Villages and an order prohibiting Caryville from providing such services. The Hearing Officer entered an Initial Order holding that, since the TRA did not have primary jurisdiction to enforce Tenn. Code Ann. § 6-51-301(a), the

---

[1] The developer of the Villages was Land Resource Company ("Land Resource").

2

petition would not be accepted or set for hearing; the record before us does not show any further action taken in the proceeding.

On January 27, 2012, TWSI filed a petition for declaratory judgment in Davidson County Chancery Court, naming the TRA, Emerson, and Caryville as defendants, and seeking a declaration that TWSI had the exclusive right to provide wastewater services to Villages and that, pursuant to Tenn. Code Ann. § 6-51-301(a), its rights under the CCN were superior to Caryville's. Emerson filed a counterclaim seeking to invalidate TWSI's CCN. In due course, TWSI moved for summary judgment and the court granted the motion, declaring that TWSI's rights were superior to those of Caryville. The court dismissed the counterclaim without prejudice to Emerson's rights to proceed before the TRA. The record does not show that an appeal was taken in the Chancery Court proceeding.

Emerson filed a petition with the TRA on March 1, 2013, requesting that the TRA terminate TWSI's CCN and SOP to provide services to Villages, asserting that, as a result of the Land Resource bankruptcy, "TWSI has no interest in the real property which comprises the Villages . . . and has no contractual rights to provide any services to the owner of the subdivision, or present or future owners of lots." TWSI filed an answer, denying any violation of statutes or regulations; a motion to dismiss, asserting that the chancery court's order established its right to provide wastewater services; and a counterclaim requesting that the TRA prevent Emerson from operating as a public utility without first obtaining a CCN. The TRA conducted a hearing on Emerson's petition on November 25, at the conclusion of which it took the matter under advisement; on December 4 the TRA entered an order denying the motion to dismiss. At a conference held on January 13, 2014, the TRA voted 2-1 to require TWSI to appear and show cause why the TRA should not revoke the CCN; further proceedings relative to Emerson's petition were held in abeyance. On March 25 the TRA issued an order setting a show cause hearing for April 14; on that date the TRA, *inter alia*, continued the matter,[2] opened a new show cause docket[3] with a hearing to be held no later than June 16, and transferred the evidentiary record from the Emerson proceeding to the new show cause proceeding. On April 24, 2014, the TRA issued a new show cause order: setting forth certain of the factual findings which had been established in the Emerson proceeding; stating that the majority of the panel "concluded that the allegations were sufficiently proven to demonstrate that TWSI has failed to comply with and/or violated state law and TRA rules"; stating four alleged violations (denominated "counts") of state law or TRA rules; and requiring TWSI to show cause why its CCN should not be revoked and other sanctions imposed.

---

[2] TWSI had previously moved to continue the hearing; Emerson and the Consumer Advocate and Protection Division of the Office of the Tennessee Attorney General, both of whom had participated in the Emerson proceeding, opposed the continuance.

[3] The new docket was assigned case number 14-00041.

The matter was heard on June 10, 2014, and on June 16 the TRA panel met and voted 2-1 to revoke TWSI's CCN, sustaining three of the four counts. An order was entered on August 11 setting forth the relevant facts as to each count and, with respect to those which it sustained, holding that: (1) TWSI failed to demonstrate the current ability to provide service in that it did not hold legal ownership or an easement to the land or system from the developer; (2) TWSI failed to begin providing services to The Villages at Norris Lake within two years of receiving its certificate of public convenience and necessity; and (3) because TWSI did not own the wastewater system, it was not in a position to comply with the TRA rule that prohibits the title of the physical assets of the wastewater system from being subject to liens or judgments.

TWSI appeals, contending that the order revoking the CCN violates Tennessee law, is arbitrary and capricious, and is unsupported by substantial and material evidence.[4] TWSI asks this court to reverse the decision.

## II. STANDARD OF REVIEW

This is a petition for direct review pursuant to Tenn. R. App. P. 12(a) of the final order of the TRA; our review is governed by the Uniform Administrative Procedures Act ("UAPA"):

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

---

[4] The Consumer Advocate, Emerson Properties, and the Villages at Norris Lake filed amicus briefs on behalf of the TRA.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h). Our Supreme Court most recently discussed the scope of judicial review of agency decisions in *StarLink Logistics Inc. v. ACC, LLC*:

The reviewing court's standard of review is narrow and deferential. …This narrow standard of review, as opposed to the broader standard of review applied in other appeals, reflects the general principle that courts should defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise. . . . Courts do not review questions of fact de novo and, therefore, do not second-guess the agency as to the weight of the evidence. This is true even if the evidence could support a different result.

No. M2014-00362-SC-R11-CV, 2016 WL 2726333, at *7 (Tenn. May 9, 2016) (citations omitted).

## III. DISCUSSION

In our review of the TRA's decision, we adopt the procedure set forth in *McEwen v. Tennessee Department of Safety*:

Tenn. Code Ann. § 4-5-322 requires courts to engage in a three-step analysis when they review a final administrative order. The court must first determine whether the agency has identified the appropriate legal principles applicable to the case. Then, the court must examine the agency's factual findings to determine whether they are supported by substantial and material evidence. Finally, the reviewing court must examine how the agency applied the law to the facts. This step is, of course, a highly judgmental process involving mixed questions of law and fact, and great deference must be accorded to the agency. At this stage, the court must determine whether a reasoning mind could reasonably have reached the conclusion reached by the agency, consistent with a proper application of the controlling legal principles.

173 S.W.3d 815, 820 (Tenn. Ct. App. 2005) (footnotes omitted) (citing *State of Maryland Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 275 (Md. Ct. Spec. App. 2003)).

The findings of fact the TRA made in the Emerson proceeding were adopted and

5

made part of the record in the show cause hearing.[5]  In the order revoking the CCN, although not specifically identified as such, the TRA made findings of fact as to counts 1, 2, and 3 as well as conclusions relative to each alleged violation; the TRA made no factual findings as to count 4.  In our analysis of this issue, we have identified the factual findings with respect to each violation in italics.

## A. Count 1

As respects Count 1, the TRA alleged that TWSI was "unwilling and/or incapable of effectively operating and/or managing The Villages in compliance with TRA rules and Tennessee statutes, and that constitutes material non-compliance and/or a violation under TRA Rule 1220-4-13-.09."  TWSI does not dispute that this regulation is the appropriate legal standard.

The factual findings as to Count 1 are as follows:

### FINDING OF VIOLATION ON COUNT 1

TWSI claims it is changing its business model in this situation, but the facts of its proposal show there has not been any substantial change in the circumstances or facts at issue in this docket. *TWSI still refuses to operate a system it does not own and still expects Emerson to build the*

---

[5] The findings in the Emerson petition proceeding are as follows:

a)  Tennessee Wastewater's CCN was amended to include the Villages at Norris Lake in an Order issued in TRA Docket No. 06-00277 on April 11, 2007.  However, to date, TWSI has not provided wastewater service to The Villages.  TWSI does not have a contract for service with Emerson, nor does Emerson intend to enter into a contractual relationship with TWSI.
b)  TWSI has not been deeded any land at The Villages, nor does it have an easement.  Emerson has no intention of giving TWSI a deed to property or an easement.
c)  TWSI does not own a wastewater system or pipes at The Villages.  Emerson will not give its system or pipes to TWSI.
d)  TWSI's business model is that the developer builds the system and then deeds it to TWSI.  TWSI's tariff does not include capital costs for it to build a system.
e)  TWSI is not willing to provide service to The Villages if the wastewater system is not given to TWSI.
f)  Since TWSI does not and cannot own the system, it is not in a position to comply with TRA Rule 1220-04-13-.10(1), which prohibits the title of the physical assets of a wastewater system from being subject to any liens or judgments.
g)  TWSI has failed to file a petition requesting approval of its alternative proof of financial security by May 1st of 2012 and 2013 and has failed to file a bond until alternative financial security is approved in violation of TRA Rule 1220-4-13-.07(5).

The order did not specify the particular count to which any or all of these findings might apply.

*system and give it to TWSI*. TWSI failed to present any evidence that Emerson will either give its system to TWSI or grant any easements to TWSI. In its proposal, *TWSI agrees to use Emerson's plans and construction company; however, the only new fact presented by TWSI relevant to Count I is that TWSI will now seek to take Emerson's system by eminent domain if Emerson continues to refuse to give its system to TWSI. Emerson maintains that it does not want to do business with TWSI and will not give or sell its system or grant an easement to TWSI.*

Further, although TWSI now asserts -- over seven years after being granted a CCN for The Villages -- a willingness to take the system by eminent domain, *it has provided no evidence that it has taken any steps toward exercising any eminent domain rights it may have*. Therefore, TWSI has not demonstrated a current ability to provide service. *TWSI remains unable to assert legal ownership or an easement to the land or the system from the owner/developer.* TWSI did not present any evidence at the hearing to overcome the finding that it was unable to provide service at The Villages. Nor did TWSI present any evidence that would cause the Authority to refrain from taking action against TWSI on this violation. Thus, TWSI failed to meet its burden of proof as to Count 1.

In the section of the revocation order entitled "Alleged Violations of State Law/TRA Rules," the TRA cites the testimony of Charles Hyatt, President of TWSI, and George Potter, Chief Manager of Emerson Properties, which was introduced in the Emerson proceeding, as evidence that supports the factual basis of the revocation. Mr. Hyatt testified that there was no enforceable contract between TWSI and Emerson; that TWSI was willing to enter into a contract to provide wastewater services to Emerson under "reasonable terms and conditions"; that Emerson had made no requests for TWSI to provide wastewater services; that TWSI did not own a wastewater facility at Villages; that TWSI did not raise capital to pay for the construction of a wastewater system; and that TWSI was unwilling to provide wastewater service if a system was not given to them. Mr. Potter testified that Land Resource filed a motion in the bankruptcy proceeding to cancel TWSI's existing contracts which was granted by the bankruptcy court; that Emerson had no existing contract with TWSI and no intent to enter into a service contract; that TWSI had no recorded interest in the land at Villages; that TWSI had no ownership or nonpossessory interest in the land at Villages; and that Emerson had no intent to provide TWSI with a wastewater system. This is substantial and material evidence supporting the factual findings as to the violation of Tenn. R. & Reg. 1220-4-13-.09.

The portion of Tenn. Comp. R. & Reg. 1220-4-13-.09 pertinent to this issue provides:

(1) Where a public wastewater utility through the actions of its owner(s), operator(s), or representative(s) demonstrates an unwillingness, incapacity, or refusal to effectively operate and/or manage the wastewater system(s) in compliance with these rules and Tennessee statutes, or the wastewater system(s) has been abandoned, the Authority shall take appropriate action based on good cause that may include suspension or revocation of a public wastewater utility's CCN, forfeiture of wastewater utility funds, and/or making a claim against the public wastewater utility's financial security.
* * *
(4) Proceedings before the Authority for suspension or revocation of a public wastewater utility's CCN, forfeiture of wastewater utility funds, and/or making a claim against the public wastewater utility's financial security shall be conducted in accordance with Tenn. Code Ann. § 65-2-106 and after notice to the public wastewater utility and its surety, and an opportunity to be heard, unless the conduct of a public wastewater utility poses an imminent threat to the health or safety of the public. In such exigent circumstances, the Authority may order the summary suspension of the CCN and follow the procedures as set forth in Tenn. Code Ann. § 4-5-320.

The Authority will not seek to suspend or revoke a public wastewater utility's CCN, to forfeit the wastewater utility funds, or make a claim against the public wastewater utility's financial security for good cause without first affording the public wastewater utility a reasonable opportunity to correct the conditions that are alleged to constitute the grounds for such action unless:

(a) the conduct of a public wastewater utility poses an imminent threat to the health or safety of the public; or
(b) a public wastewater utility is unable to provide safe, adequate, and reliable wastewater service.

Tenn. Comp. R. & Regs. 1220-04-13-.09(1) and (4).

TWSI contends that the revocation of the CCN violated Tenn. Comp. R. & Reg. 1220-4-13-.09(4) because TWSI was not given a "reasonable opportunity" to correct the conditions which led to the revocation of the CCN. In response the TRA contends: (1) that TWSI was given a reasonable opportunity to cure within the meaning of the statute; (2) that under Tenn. Comp. R. & Reg. 1220-4-13-.09(4)(b), TWSI failed to provide "safe, adequate, and reliable wastewater service"; and therefore, (3) the TRA is not required to allow TWSI additional time to obtain ownership rights prior to revoking the CCN.

As stated earlier, the scope of judicial review of agency decisions is narrow.

8

*StarLink Logistics Inc.*, 2016 WL 2726333, at \*7.  Our Supreme Court has stated that "[g]enerally, courts must give great deference and controlling weight to an agency's interpretation of its own rules.  A strict standard of review applies in interpreting an administrative regulation, and the administrative interpretation 'becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  *BellSouth Advertising & Publishing Corp. v. Tennessee Regulatory Auth.*, 79 S.W.3d 506, 514 (Tenn. 2002) (citing *Jackson Express, Inc. v. Tennessee Public Service Comm'n*, 679 S.W.2d 942, 945 (Tenn. 1984).

In the present case, the TRA determined that, because TWSI provided no evidence that it had taken steps toward exercising any eminent domain rights it had and was unable to assert legal ownership or easement rights to either the land or the wastewater system at the Villages, TWSI failed to demonstrate an ability to provide service or present any evidence at the hearing to overcome the findings that it was unable to provide service.  The TRA concluded:

> [U]nder TRA Rules 1220-04-13, et. seq., where a public wastewater utility demonstrates through its actions an unwillingness or incapacity to effectively operate or manage the wastewater system (i.e., provide service) in compliance with applicable statutes, rules, and orders of the Authority, the TRA shall take appropriate action based on good cause; such action may include suspension or revocation of the utility's CCN. . . . [T]he Authority is not required to afford a utility an opportunity to correct the conditions that are alleged to constitute grounds for the revocation when there is an imminent threat to public health or safety or the utility is unable to provide safe, adequate, and reliable service.  It has been clearly established in the record that TWSI is unable to provide safe, adequate, and reliable service at The Villages, thus the Authority is not required to provide TWSI with an opportunity to cure.  Nevertheless, even if the Authority were required to provide an opportunity to cure, the Authority has done so.  TWSI has had multiple opportunities to cure, the most recent being since the filing of Emerson's complaint in Docket No. 13-00017 on January 6, 2013.

(footnote omitted).

While TWSI contends that Tenn. R. & Reg. Rule 1220-4-13-.09 requires that it be given a reasonable opportunity to cure the deficiencies before the CCN was revoked, the regulation only allows such opportunity unless there is an imminent threat to the public health and safety or the utility is "unable to provide safe, adequate, and reliable wastewater service." Tenn. R. & Reg. Rule 1220-4-13-.09(4)(b).  Here, the TRA determined that TWSI did not have the ability to provide safe and adequate service and, therefore, that an opportunity to cure was not required.  This decision is consistent with

the evidence and is a reasonable application of the authority granted the TRA in Tenn. R. & Reg. 1220-4-13-.09. The record also supports the finding that TWSI had several opportunities to correct the conditions which led to the show cause hearing and failed to do so.

## B. Count 2

With respect to Count 2, the TRA alleged that "TWSI's failure to provide wastewater services within two (2) years of obtaining its CCN . . . constitutes material non-compliance and/or violation of TRA Rule 1220-04-13-.06(4)."

The factual findings relative to Count 2 are set forth below:

### FINDING OF VIOLATION ON COUNT 2

In violation of TRA Rule 1220-04-13-.06(4), *TWSI did not begin providing service to The Villages within 2 years of receiving its CCN. Emerson purchased The Villages out of bankruptcy in February 2009*. Even though the previous developer at The Villages filed for bankruptcy, *TWSI has had at least since 2009, when Emerson purchased the property, to come into compliance with this rule. Yet, TWSI has done nothing to attempt to comply with the rule for several years*. TWSI admitted that it did not contact Emerson to try to reach an agreement after Emerson's negative experience with Mr. Hines, who was TWSI's representative. In fact, Mr. Hyatt testified at the hearing that:

> [W]e should have been more aggressive shortly after the bankruptcy and called the bonds. The bonds were held by the county on our behalf to complete all three phases of the sewer system. ... If we would have stepped in right then and there and negotiated the bonds, I don't think we would be here today talking about this.

By its own testimony, *TWSI could have called the construction bonds to complete the system and begin providing service, yet it did not take action. TWSI could have tried to reach an agreement with Emerson after it purchased The Villages, but it neglected to do so*. Thus, TWSI has failed to provide wastewater service to The Villages within the time period required by TRA Rule 1220-04-13-.06(4), and such *failure appears from the evidence to be the result of an unwillingness and/or incapacity on the part of TWSI*. TWSI failed to present any evidence to rebut Count 2 that would cause the Authority to refrain from taking action against TWSI on this violation. Thus, TWSI has failed to meet its burden of proof as to

10

Count 2.

In the order, the TRA cites to the testimony of George Potter and Charles Hyatt in the Emerson proceeding as evidence that supports the factual basis of the violation as alleged in count 2. Mr. Potter testified that TWSI had not rendered any services to Villages since Emerson purchased the property in 2009. Mr. Hyatt testified that the CCN to Villages was issued in 2007 and remains in effect, and that TWSI was not currently providing wastewater services to Villages and had not done so since the CCN was issued in 2007. This is substantial and material evidence in support of the findings as to count 2 quoted above.

Tenn. Comp. R. & Reg. 1220-4-13-.06(4) states:

If wastewater service has not been provided in any part of the area which a public wastewater utility is authorized to serve within two (2) years after the date of authorization for service to such part, whether or not there has been a demand for such service, the Authority may require the public wastewater utility to demonstrate that it intends to provide service in the area or part thereof, or that based on the circumstances of a particular case, there should be no change in the certified area, to avoid revocation or amendment of a CCN.

TWSI does not dispute that Tenn. Comp. R. & Reg. 1220-4-13-.06(4) was the appropriate legal principle, but argues that the TRA violated Tenn. Code Ann. §§ 65-4-107[6] & 65-1-113[7] by revoking the CCN because the CCN Order required the developer to

---

[6] At the time the Emerson proceeding was initiated, Tenn. Code Ann. § 65-4-107 stated:

(a) No privilege or franchise hereafter granted to any public utility by the state or by any political subdivision of the state shall be valid until approved by the authority, such approval to be given when, after hearing, the authority determines that such privilege or franchise is necessary and proper for the public convenience and properly conserves the public interest, and the authority shall have power, if it so approves, to impose such conditions as to construction, equipment, maintenance, service or operation as the public convenience and interest may reasonably require; provided, however, that nothing contained in this chapter shall be construed as applying to the laying of sidings, sidetracks, or switchouts, by any public utility, and it shall not be necessary for any such public utility to obtain a certificate of convenience from the authority for such purpose.

Effective March 22, 2016, the statute was amended to add a section (b). That section has no relevance to this proceeding.

[7] Tenn. Code Ann. § 65-1-113 states:

11

fund and construct the wastewater system as a condition precedent to TWSI's duty to provide services. We do not agree that the CCN order can be interpreted in the manner urged by TWSI.

The portion of the CCN Order which TWSI contends imposed a condition precedent to its obligation to provide services is contained in a section titled "The Petition"; in that section the order sets forth the factual and procedural background of the filing of TWSI's petition to expand its CCN, the details of the proposal, and the intent of the various parties as to the construction, operation, financial obligations, and property rights with respect to the wastewater system. The specific language says:

> TWS[I] states that no contracts have been signed at this point; however, it is the intent of the parties that TWS[I] will own the collection, treatment, and dispersal system and a permanent easement to the property occupied by the system. The estimated contributed capital from the developer is $3,000,000; therefore, limited funding is needed from TWS[I] to construct the initial wastewater systems. TWS[I] is responsible for any future additions to its infrastructure.

While Tenn. Code Ann. § 65-4-107 allows the TRA, in its discretion, to impose conditions upon the grant of CCN's, the order does not impose any such conditions. This language is a summary of the relevant procedural background and details of TWSI's petition, not a mandate by the TRA.

TWSI also argues that the TRA violated Tenn. Code Ann. § 65-1-113 when it did not enforce these conditions. In light of our holding that the CCN Order did not impose conditions precedent, this argument fails.

## C. Count 3

With respect to Count 3, the TRA alleged that "TWSI does not own either land or the wastewater system and appears unable to obtain ownership of the system from the owner/developer . . . . [and] is not in compliance nor in a position to comply with TRA Rule 1220-04-13-.10(1)."

The entire finding as to Count 3 is as follows:

TWSI also failed to present any evidence to rebut Count 3. TWSI is not

---

It is the duty of the Tennessee regulatory authority to ensure that Acts 1995, ch. 305 and all laws of this state over which they have jurisdiction are enforced and obeyed, that violations thereof are promptly prosecuted, and all penalties due the state are collected.

currently in compliance or in a position to comply with this rule, which prohibits the title of the physical assets of a wastewater system from being subject to any liens or judgments. *TWSI does not own the wastewater system, and based on the facts in the record, remains unable to obtain ownership of the system*. As such, TWSI remains in violation of TRA Rule 1220-04-13-.10(l). In fact, *the record shows that the title of the physical assets has indeed been encumbered*. The facts in the record clearly show that TWSI is currently unwilling and unable to provide service at The Villages in compliance with state law or the TRA's Rules, and TWSI did not offer any evidence that would cause the Authority to refrain from taking action on this violation. Thus, TWSI has failed to meet its burden of proof on Count 3.

The revocation order cites the testimony of George Potter at the Emerson proceeding as evidence that supports the finding of a violation as alleged in count 3. In Mr. Potter's October 2013 testimony, he testified that TWSI had no recorded interest in the real estate; that Emerson obtained loans to fund the purchase and development of the Villages and "pledged virtually all of the real estate of the development including the property that was to house" the wastewater system, as collateral; and that TWSI "does not presently have an interest in that property and cannot hold that property free and clear." The order also cites Mr. Potter's testimony at the November 25, 2013 proceeding in which he testified as to what Emerson had done since acquiring the property to construct and operate the wastewater system, including securing the services of Caryville as well as necessary approvals from the TDEC. This is substantial and material evidence in support of the finding as to count 3 that TWSI has no ownership rights to the system or the property and could not obtain the same.

Tenn. Comp. R. & Reg. 1220-4-13-.10(1) reads:

Title to all physical assets of the wastewater system managed or operated by a public wastewater utility shall not be subject to any liens, judgments, or encumbrances, except as approved by the Authority pursuant to Tenn. Code Ann. § 65-4-109.

Tenn. Comp. R. & Reg. 1220-4-13-.10(1) is intended to prevent a wastewater facility from being subject to liens or other encumbrances. TWSI has no ownership interest in the real property or in the wastewater system under construction; accordingly, it is not in a position to prevent liens or encumbrances on the land or the system. The TRA's determination is a reasonable application of the rule to the facts presented.[8]

---

[8] We acknowledge TWSI's argument, related to the discussion at Section III A, *supra*, that the effect of the revocation order was to deny TSWI the opportunity to exercise its condemnation power to complete the system. We determined in that section, however, that Tenn. Comp. R. & Reg. 1220-4-13-.09 did not

## D. Sufficiency of the Evidence

TWSI argues separately that the revocation order should be reversed, contending that the determination that TWSI did not present evidence to rebut the violations is contrary to the record, and that the order failed to mention certain evidence in the record which weighs against the decision to revoke the CCN. Specifically, TWSI identifies the following evidence:

1. The complete record of the Emerson hearing
2. A joint stipulation of the parties.
3. The deposition transcript of Frank Wallace, Executive Director of Caryville, with exhibits.
4. The deposition transcript of George Potter, with exhibits.

Upon our review, we note that in the revocation order, the TRA cites to the pre-filed direct testimony of George Potter as well as his testimony during the November 25 proceeding; the revocation order incorporated the findings and conclusions made in the April 24, 2014 show cause order which, in turn, referenced and incorporated the record of the Emerson petition proceeding; the evidence in the Emerson proceeding included the pleadings, pre-filed direct and rebuttal testimony of Charles Hyatt and George Potter and exhibits, and the orders initiating the TRA's show cause docket. The revocation order also discusses the testimony of George Potter during the show cause hearing and his May 12, 2014 deposition testimony, and discusses the joint stipulation of facts. TWSI's contention that the final order failed to consider the entire evidence presented during the show cause hearing is without merit.

TWSI argues that in light of the evidence it presented, the revocation was not supported by substantial and material evidence. We do not reweigh evidence or second-guess the agency as to the weight of the evidence on questions of fact. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). We have considered the evidence which TWSI incorrectly states was not considered in the order and see nothing that detracts from evidence supporting the factual findings of the TRA; the revocation was supported by substantial and material evidence.

## E. Tenn. Code Ann. §§ 65-4-117 & 65-4-114

TWSI argues that, pursuant to authority granted at Tenn. Code Ann. §§ 65-4-117(a)[9] and Tenn. Code Ann. § 65-4-114(1) & (2),[10] the TRA should have required TWSI

---

require an opportunity to cure under the facts presented.

[9] Tenn. Code Ann. § 65-4-117(a) states, in relevant part:

(a) The authority has the power to:

to complete construction of the wastewater system at its own expense and provide wastewater services rather than revoke the CCN. We do not agree.

Tenn. Code Ann. § 65-4-117(a)(1) confers the authority to investigate matters that concern public utilities; § 65-4-114(1) & (2) vests the TRA with the authority to compel a public utility to furnish service, maintain property and equipment in a manner that allows said service to be provided, and to construct extensions of existing facilities when the TRA deems such construction reasonable. While both statutes grant the TRA this authority, we do not read either statute as a mandate that the TRA use its authority to require a public utility to provide services in all circumstances; § 65-4-114 also gives the TRA authority to "abandon any service when, in the judgment of the authority, the public welfare no longer requires the same." Inherent in the statutory framework is discretion granted to the TRA in the exercise its power. The decision to revoke the CCN was within the authority granted the TRA and not a violation of Tenn. Code Ann. §§ 65-4-117 or 65-4-114.

_____

(1) Investigate, upon its own initiative or upon complaint in writing, any matter concerning any public utility as defined in § 65-4-101.

[10] Tenn. Code Ann. 65-4-114(1) and (2) state:

The authority has the power, after hearing, upon notice, by order in writing, to require every public utility, as defined in § 65-4-101, to:
(1) Furnish safe, adequate, and proper service and to keep and maintain its property and equipment in such condition as to enable it to do so; and
(2) Establish, construct, maintain, and operate any reasonable extension of its existing facilities where, in the judgment of the authority, such extension is reasonable and practicable, and will furnish sufficient business to justify the construction, operation, and maintenance of the same, and when the financial condition of the public utility affected reasonably warrants the original expenditure required in making such extension, or to abandon any service when, in the judgment of the authority, the public welfare no longer requires the same.

15

## IV. CONCLUSION

For the foregoing reasons and affording deference and controlling weight to the TRA's interpretation of its rules, we conclude that the revocation was supported by substantial and material evidence; the TRA did not violate Tenn. R. & Reg. 1220-4-13-.09, Tenn. Code Ann. §§ 65-4-107, 65-1-113, 65-4-117, or 65-4-114 in revoking the CCN; and that the decision to revoke the CCN is a reasonable application of Tenn. R. & Reg. 1220-04-13-.10(l) to the facts presented. The order is, accordingly, affirmed.

RICHARD H. DINKINS, JUDGE